## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRYAN NELL, <br> ABDUL PONTON, <br> and all others similarly situated, <br><br> Plaintiffs, <br> vs. <br><br> THE CITY OF NEW YORK, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. <br> ) <br> ) (Jury Trial Demanded) <br> ) <br> ) <br> ) <br> ) |

## **COMPLAINT**

### INTRODUCTION

This is an action brought under the Fair Labor Standards Act ("FLSA") to recover unpaid overtime for the plaintiffs when they have worked as Motor Vehicle Operators at the New York City Department of Corrections without compensation. The Defendant City of New York's ("the City" or defendant) failure to pay plaintiffs for overtime work they performed violates section 7(a) of the FLSA, 29 U.S.C. § 207(a). Plaintiffs, by and through their counsel, the law firms of McGillivary Steele Elkin LLP, and Spivak Lipton LLP, for their complaint against the City of New York ("City"), state as follows:

### PARTIES

1. Plaintiffs have given their written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b) of the FLSA. Such written consents are appended to this Complaint as Exhibit 1. These written consent forms set forth each plaintiff's name and address. The plaintiffs bring this action as a collective action in accordance with 29 U.S.C. §

216(b) of the FLSA against the defendant City of New York, because of defendant's unlawful deprivation of plaintiffs' right to overtime compensation pay in accordance with the FLSA.

2. Defendant City of New York is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The City of New York has a principal office and place of business located at Broadway and Park Row, New York, New York, 10007, and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, 10007.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

5. Plaintiffs are, and at all times material herein have been, employed by the New York City Department of Correction ("DOC"), City of New York, as Motor Vehicle Operators ("MVO").

6. At all times material herein, plaintiffs Bryan Nell and Abdul Ponton have worked for the DOC at the Rikers Island Facilities.

7. Plaintiffs bring this action for a declaratory judgment, back pay and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy the defendant's willful and unlawful violations of federal law complained of herein.

8. Each of the plaintiffs in this action while employed by defendant has been an "employee" within the meaning of the FLSA. 29 U.S.C. § 203(e)(1).

9. Within the last three years and continuing to date, while working in the position of MVO on behalf of defendant City of New York, plaintiffs Nell and Ponton's job duties include but are not limited to delivering DOC mail, transporting food, transporting DOC employees, transporting visitors to the facilities, and towing other vehicles on the island.

10. While working as MVOs, the plaintiffs and all others similarly situated routinely work over 40 hours a week. However, the City fails to compensate plaintiffs for all hours worked over 40 in a workweek at a rate of one and one-half times their regular rate of pay. Specifically, the City fails to compensate plaintiffs for hours worked before the start of their scheduled shifts, after the end of their scheduled shifts and during their 30-minute unpaid meal periods.

11. While working as MVOs, the plaintiffs and all others similarly situated are occasionally compensated for hours worked over 40 in a workweek if the overtime hours were pre-approved. However, when the City compensates plaintiffs for overtime hours which were pre-approved, the City systemically fails to pay plaintiffs for this overtime work at the correct regular rate of pay.

12. The defendant captures the work hours of MVOs, including time spent working before their scheduled shift begins, on the defendant's timekeeping system, "CityTime," which is maintained at most MVOs work locations. CityTime tracks plaintiffs' work time on a minute-by-minute basis.

13. Plaintiffs' timekeeping and payroll data is in defendant's exclusive possession and is not readily available to plaintiffs. As Judge Castel recently explained in *Murray, et al. v. City of New York*, No. 1:16-cv-08072-PKC, a case that involves employees of defendant City of New York at the City's Department of Homeless Services ("DHS") who also use CityTime,

3

plaintiffs' payroll data is not readily available to plaintiffs because it "is maintained across various DHS branches, not available for download or electronic transfer, not text-searchable, not maintained for more than two years, and requires a separate search for each pay period." *Murray,* No. 1:16-cv-08072, Dkt. 66 at 3. The same is true here: plaintiffs' payroll data is not readily available to them because it is maintained across various DOC branches, not available for download or electronic transfer, not text-searchable, not maintained for more than two years, and requires a separate search for each pay period.

### *Uncompensated Pre-shift, Post-shift and Meal Period Work Performed by Plaintiffs*

14.     While working as MVOs, plaintiffs and all others similarly situated routinely work over 40 hours a week.  MVOs are scheduled for 5 shifts of 8 hours and 30 minutes in length each week. 30 minutes is automatically deducted each shift as an uncompensated meal period. Thus, plaintiffs and all others similarly situated are scheduled to perform a minimum of 40 hours of work per workweek.

15.     Plaintiffs frequently work overtime in addition to their regular 40 hours of work per week performing their regular job duties for which they are not compensated. Specifically, they routinely work additional hours before the official start time of their regularly scheduled shifts, after the end of their regularly scheduled shifts, and they routinely work through their unpaid meal periods, without compensation. This pre-shift, post-shift and meal period work alone causes plaintiffs to work in excess of 40 hours in each week because it has to be done in addition to working their regularly scheduled 40 hours per week shifts. Thus, plaintiffs regularly work these additional uncompensated hours in workweeks in which they work over 40 hours.

16.     Plaintiffs clock in at a central location and take a shuttle to their assigned work location. They begin work before the official start time of their shifts and perform pre-shift

activities, including but not limited to the tasks listed in Paragraph 9, as well as preparing for their shift by retrieving equipment and vehicle keys and preparing the vehicle to transport supplies during their shift.

17. Plaintiffs also work through their 30-minute unpaid meal periods performing the tasks listed in Paragraph 9 for which they are not compensated.

18. Plaintiffs also work after the end of their scheduled shifts and perform post-shift activities, including but not limited to the tasks listed in Paragraph 9, as well as returning their assigned vehicles to the assigned location.

19. For example, plaintiff Nell routinely works over 40 hours in a workweek. When plaintiff Nell works over 40 hours, defendant fails to compensate him for work, including but not limited to when he is performing tasks enumerated in paragraphs 9, 16, 17 and 18 before the official time his shift begins, after the official end time of his shift and during his meal periods. Plaintiff Nell is regularly scheduled to work from 9:00 a.m. to 5:30 p.m., five days per week. He arrives and begins working approximately 30 minutes before the start of every shift. During this time, he prepares for his shift by retrieving equipment for his work vehicle and retrieving the work vehicle keys, performing a pre-trip vehicle inspection and preparing the vehicle for his shift. Occasionally, plaintiff Nell cannot finish performing his duties during his regularly scheduled shift due to the volume of work and continues performing work for approximately 15 to 20 minutes past the end of his shift. When plaintiff Nell performs work for approximately 15 to 20 minutes past the end of his shift, he is not compensated for this time because it has not been pre-approved by a supervisor. Additionally, plaintiff Nell occasionally works through his meal period, performing the duties listed in paragraph 9.

20. For example, during the workweek ending on February 15, 2019, plaintiff Nell worked approximately 45 hours, excluding his meal periods; 5 hours of this time was uncompensated, although during this recorded work time, plaintiff Nell performed the work activities identified above. In another example, during the workweek ending on March 1, 2019, plaintiff Nell similarly worked approximately 44 hours and 30 minutes excluding his meal periods; 4 hours and 30 minutes of this time was uncompensated although during this recorded work time plaintiff Nell performed the work activities identified above. During these weeks in which he performed unpaid work duties recorded on CityTime, plaintiff Nell also performed work activities identified in paragraph 9 during his meal periods, causing to him to work in excess of 40 hours, for which he received no compensation.

21. Plaintiff Ponton also routinely works over 40 hours in a workweek. When plaintiff Ponton works over 40 hours, defendant fails to compensate him for work, including but not limited to when he is performing tasks enumerated in paragraphs 9, 16,17 and 18 before the official time his shift begins, after the official end time of his shift and during his meal periods. Plaintiff Ponton is regularly scheduled to work from 5:00 a.m. to 1:30 p.m., five days per week. He arrives and begins working approximately 30 minutes before the start of every shift. During this time, he prepares for his shift by retrieving equipment for his work vehicle and retrieving the work vehicle keys, performing a pre-trip vehicle inspection and preparing the vehicle for his shift. Occasionally, plaintiff Ponton cannot finish performing his duties during his regularly scheduled shift due to the volume of work and continues performing work for approximately 15 to 20 minutes past the end of his shift. When plaintiff Ponton performs work for approximately 15 to 20 minutes past the end of his shift, he is not compensated for this time

because it has not been approved by a supervisor. Additionally, plaintiff Ponton occasionally works through his meal period, performing the duties listed in paragraph 9.

22.     For example, during the workweek ending on August 12, 2017, plaintiff Ponton worked 47 hours and 21 minutes, excluding his meal periods; 1 hour and 51 minutes of this time was uncompensated, although during this recorded work time plaintiff Ponton performed the work activities identified above. In another example, during the workweek ending on August 19, 2017, plaintiff Ponton similarly worked approximately 62 hours excluding his meal periods; 2 hours of this time was uncompensated although during this recorded work time plaintiff Ponton performed the work activities identified above. During these weeks in which he performed unpaid work duties recorded on CityTime, plaintiff Ponton also performed work activities identified in paragraph 9 during his meal periods, causing to him to work in excess of 40 hours, for which he received no compensation.

### *Vehicle Differentials and the Rate at Which Overtime is Paid to Plaintiffs*

23.     Individuals employed by defendant at DOC in the position of MVO are paid a night shift differential of ten percent (10%) of their basic rate of pay when they work more than one hour between 6 p.m. and 8 a.m. The night shift differential is taxed as ordinary income to the plaintiffs.

24.     Individuals employed by defendant at DOC in the position of MVO who drive certain commercial vehicles are provided a shift differential in an amount ranging from $5.14 to $40.08 per shift, when they drive such vehicles while on duty. The amount varies depending on the type of vehicle they drive. The shift differential for driving certain vehicles is taxed as ordinary income to the plaintiffs.

25. During workweeks in which plaintiffs work over 40 hours and are paid a shift differential for driving certain vehicles, defendant fails to include the vehicle differential pay in the calculation of the regular rate of pay for cash overtime payments made to plaintiffs pursuant to a systematic, Agency-wide practice.

26. Plaintiffs earned differentials during weeks in which they worked over 40 hours, but these payments were not fully included in plaintiffs' regular rate of pay for overtime compensation during these workweeks. For example, during the workweek ending October 13, 2018, plaintiff Nell was paid a vehicle differential payment and worked 4 hours of pre-approved overtime for which he was compensated, but the vehicle differential payment was not included in the regular rate at which defendant paid him overtime compensation for the hours he worked over 40 in that workweek. Similarly, during the workweek ending July 29, 2017, plaintiff Ponton was paid a vehicle differential payment and worked 5 hours of pre-approved overtime for which he was compensated, but the vehicle differential payment was not included in the regular rate at which defendant paid him overtime compensation for the hours he worked over 40 in that workweek.

## COUNT I

### FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)

27. Plaintiffs hereby incorporate by reference paragraphs 1 through 25 in their entirety and restate them herein.

28. At all times material herein, during those workweeks in which plaintiffs have worked hours in excess of 40 hours a week, they have performed work activities, including but not limited to when they are performing tasks enumerated in paragraphs 9, 16, 17 and 18,

without compensation before the start of their shifts and after the end of their scheduled shifts, all of which is recorded on defendant's timekeeping system CityTime. Plaintiffs also have performed work during their unpaid meal periods, causing them to work in excess of 40 hours in a given week. Accordingly, as a result of these pay practices, defendant has failed to provide plaintiffs with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

29. Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of forty hours per week. Defendant has failed to comply with the overtime pay requirements of the FLSA by failing to compensate plaintiffs, and all others similarly situated, for work that they have been suffered or permitted to work before the official start time of their shifts, after the end of their scheduled shifts and during their uncompensated meal periods.

30. As a result of defendant's willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs, and all others similarly situated, an amount that has not yet been precisely determined. The employment and work records for these plaintiffs are in the exclusive possession, custody and control of the defendant and its public agencies and these plaintiffs are unable to state at this time the exact amount owing to them. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to these plaintiffs from which the amount of defendant's liability can be ascertained.

31. Pursuant to 29 U.S.C. § 216(b), plaintiffs, and all others similarly situated, are entitled to recover liquidated damages in an amount equal to their back-pay damages for the defendant's failure to pay overtime compensation.

32. Plaintiffs, and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT II

### FAILURE TO PROPERLY CALCULATE THE REGULAR RATE OF PAY FOR PLAINTIFFS IN VIOLATION OF SECTION 7 OF THE FLSA

33. Plaintiffs hereby incorporate by reference paragraphs 1 through 31 in their entirety.

34. Section 207(a) of the FLSA, 29 U.S.C. § 207(a), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq.*, require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions. Defendant has failed to include certain premium payments such as night shift and vehicle differential pay in plaintiffs' regular rates of pay for purposes of computing overtime pay entitlements of plaintiffs, and of all others similarly situated. Defendant's failure to include vehicle differential pay and other forms of additional compensation in plaintiffs' regular rates of pay violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b). The failure to include vehicle differential pay in plaintiffs' regular rates means that when plaintiffs receive paid overtime for working over 40 hours a week, they are paid at a rate that is below the rate mandated by the FLSA.

35. As a result of the defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to plaintiffs, and all others similarly situated, an amount that has not yet been precisely determined. The employment and work records for the plaintiffs, and all others similarly situated, reflecting such ongoing violations

are in the exclusive possession, custody and control of defendant and its public agencies so the plaintiffs are unable to state at this time the exact amount owing to them. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the plaintiffs from which the amount of defendant's liability can be ascertained.

36. Pursuant to 29 U.S.C. § 216(b), plaintiffs, and all others similarly situated are entitled to recover liquidated damages in an amount equal to their back-pay damages for the defendant's failure to pay proper overtime compensation.

37. Plaintiffs, and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs hereby pray that this Court:

(a) Enter judgment declaring that the defendant has willfully and wrongfully violated their statutory obligations, and deprived each of the plaintiffs and all others similarly situated of his and her rights under the FLSA;

(b) Order a complete and accurate accounting of all the compensation to which the plaintiffs and all others similarly situated are entitled;

(c) Award plaintiffs and all others similarly situated monetary liquidated damages equal to their unpaid compensation;

(d) Award plaintiffs and all others similarly situated interest on their unpaid compensation;

(e) Award plaintiffs and all others similarly situated their reasonable attorneys' fees to be paid by the defendant, and the costs and disbursements of this action; and

(f) Grant such other relief as may be just and proper.

Respectfully submitted,

*/s/ Sara L. Faulman*
Gregory K. McGillivary
Sara L. Faulman
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC  20005
Phone: (202) 833-8855
gkm@mselaborlaw.com
slf@mselaborlaw.com

*/s/ Hope Pordy*
Hope Pordy
SPIVAK LIPTON, LLP
1700 Broadway
Suite 2100
New York, NY  10019
Phone: (212) 765-2100
hpordy@spivaklipton.com