Index No. 19 Civ. 6702 (LGS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRYAN NELL, *et al.*,

Plaintiffs,

v.

CITY OF NEW YORK, NEW YORK,

Defendant.

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT & IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorneys for Defendant*
*100 Church Street - Room 2-111*
*New York, NY 10007*

*Of Counsel:  Shawna C. MacLeod*
*Tel:  (212) 356-3187*
*Matter No.* 2019-049999

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iii

PRELIMINARY STATEMENT ........................................................ 1

STATEMENT OF FACTS ................................................................ 3

ARGUMENT

POINT I

SUMMARY JUDGMENT SHOULD BE
GRANTED TO DEFENDANT .................................................. 4

A. Plaintiffs' "Off the Clock" Claim Fails as a
Matter Of Law ................................................................ 4

1. Knowledge of the Performance of
Uncompensated Work Is a Prerequisite to
a Finding of Liability For an Off-the-
Clock Claim .................................................4

2. As a Matter of Law, an Employer Does
Not Have Actual or Constructive
Knowledge of Time Spent Working that
Was Not Reported Pursuant To Its
Procedures ...................................................6

3. Plaintiffs Failed to Provide the City with
the Required Notice that They Performed
Uncompensated Work...................................12

B. Plaintiffs' Regular Rate Claim Fails as a Matter
of Law ......................................................... 13

C. Plaintiffs' Straight Time Claim Fails as a
Matter of Law ................................................ 14

D. Plaintiffs' Delayed Payment Claims Fail as a
Matter of Law ................................................ 14

E. Liquidated Damages Are Not Recoverable
Because Defendant Acted in Good Faith.......................... 15

**Page**

1. The City Demonstrated Subjective Good Faith ...................................................16

2. Defendant's Conduct Was Objectively Reasonable ..............................................18

F. The Statute Of Limitations Should Be Restricted to Two Years .................................... 19

G. Plaintiff Rivas's Claims Should Be Dismissed for His Failure to Prosecute This Case ............................................. 20

POINT II

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED ...................................... 22

A. Plaintiffs Are Not Entitled to Summary Judgment on Their Off-the-Clock Claims ......................................... 22

1. Plaintiffs Have Not Established They Performed Work Outside of Their Shifts..................................22

2. Plaintiffs Have Not Established that Defendant Knew They Performed Uncompensated Work..................................25

3. Plaintiffs Have Not Clearly Accounted for the Unpaid Overtime They Claim..................................27

B. Defendant Properly Calculated the Regular Rate ............................................................ 28

C. Plaintiffs Are Not Entitled to Summary Judgment on Their Straight Time Claims...........................................28

D. The Record Does Not Establish that Defendant Delayed Overtime Payments ............................................. 29

E. Plaintiffs Are Not Entitled To Liquidated Damages ......................................................... 30

F. Plaintiffs Have Not Established That Any Violation Of The FLSA Was Willful ................................................ 30

CONCLUSION.......................................................... 31

# TABLE OF AUTHORITIES

**Cases**                                                                      **Pages**

*Allen v. City of Chi.*,
   865 F.3d 936 (7th Cir. 2017) ................................................................9

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)........................................................................3

*Arcadi v. Nestle Food Corp.*,
   38 F.3d 672 (2d Cir. 1994)...............................................................23

*Baptiste v. Sommers*,
   768 F.3d 212 (2d Cir. 2014)..............................................................21

*Boelk v. AT&T Teleholdings, Inc.*,
   2013 U.S. Dist. LEXIS 101111 (W.D. Wis. Jan. 10, 2013) ....................6

*Bowrin v. Catholic Guardian Soc'y*,
   417 F. Supp. 2d 449 (S.D.N.Y. 2006)...................................19, 20, 30

*Brennan v. City of Phila.*,
   2016 U.S. Dist. LEXIS 80299 (E.D. Pa. June 21, 2016) .................14, 15

*Brown v. ScriptPro, LLC*,
   700 F.3d 1222 (10th Cir. 2012) ........................................................8

*Caserta v. Home Lines Agency, Inc.*,
   273 F.2d 943 (2d Cir. 1959)..............................................................9

*Conzo v. City of N.Y.*,
   667 F. Supp. 2d 279, 288-89667 F.Supp.2d ......................................29

*Cross v. Ark. Forestry Comm'n*,
   938 F.2d 912 (8th Cir. 1991) ..........................................................17

*De La Cruz v. City of New York*,
   Case No. 14-cv-9220 (S.D.N.Y)......................................................26

*DeBejian v. Atlantic Testing Lab., Ltd.*,
   64 F. Supp. 2d 85 (N.D.N.Y 1999)..............................................20, 30

*Edwards v. City of New York*,
   No. 08 CV 3134 (DLC), 2012 U.S. Dist. LEXIS 68055
   (S.D.N.Y. May 15, 2012)......................................................... 10-11, 13

**Cases**                                                                                                                                **Pages**

*Fairchild v. All Am. Check Cashing, Inc.*,
   815 F.3d 959 (5th Cir. 2016) ............................................................................................7, 12

*Fed. Trade Comm'n v. Moses*,
   913 F.3d 297 (2d Cir. 2019)..............................................................................................4

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
   646 F.2d 413 (9th Cir. 1981) ............................................................................................7

*Foster v. City of New York*,
   Case No. 14-cv-4142 (S.D.N.Y.) ....................................................................................26

*Gorman v. Consol. Edison Corp.*,
   488 F.3d 586 (2d Cir. 2007)............................................................................................23

*Green v. Fed. Express Corp.*,
   614 F. App'x 905 (9th Cir. 2015) ...................................................................................12

*Grosswiler v. Freudenberg-NOK Sealing Techs.*,
   2015 U.S. Dist. LEXIS 109592 (N.D. Ohio Aug. 19, 2015),
   *aff'd*, 642 F. App'x 596 (6th Cir. Mar. 2, 2016) ........................................................6, 8

*Herman v. RSR Sec. Servs. Ltd.*,
   172 F.3d 132 (2d Cir. 1999)......................................................................................15, 19

*Hertz v. Woodbury County*,
   566 F.3d 775 (8th Cir. 2009) .......................................................................................7, 12

*Hibbert v. Apfel*,
   No. 99-cv-4246 (SAS) ....................................................................................................22

*Holcombe v. Skupien*,
   No. 14-cv-1448 (PAC) (JLC), 2014 U.S. Dist. LEXIS 170143,
   2014 WL 6879077 (S.D.N.Y. Dec. 5, 2014) .................................................................22

*Holzapfel v. Town of Newburgh*,
   145 F.3d 516 (2d Cir. 1998)...........................................................................................5, 9

*Inclan v. N.Y. Hosp. Grp., Inc.*,
   95 F. Supp. 3d 490 (S.D.N.Y. 2015)..............................................................................17

*Integrity Staffing Sols., Inc. v. Busk*,
   135 S. Ct. 513 (2014)......................................................................................................23

*Joza v. WW JFK LLC*,
   2010 U.S. Dist. LEXIS 94419 (E.D.N.Y. Sept. 9, 2010)............................................8, 13

**Cases**                                                                                                       **Pages**

*Kadden v. VisuaLex,*
  LLC, 910 F. Supp. 2d 523 (S.D.N.Y. 2012) ..................................................................20, 30

*Kellar v. Summit Seating, Inc.,*
  664 F.3d 169 (7th Cir. 2011) .............................................................................................6

*Kosakow v. New Rochelle Radiology Assocs., P.C.,*
  274 F.3d 706 (2d Cir. 2001)...............................................................................................4

*Kuebel v. Black & Decker Inc.,*
  643 F.3d 352 (2d Cir. 2011)...............................................................................................4

*Lucas v. Miles,*
  84 F.3d 532 (2d Cir. 1996).................................................................................................21

*McFeeley v. Jackson St. Entm't, LLC,*
  825 F.3d 235 (4th Cir. 2016) ..............................................................................................17

*McLaughlin v. Richland Shoe Co.,*
  486 U.S. 128 (1988)............................................................................................................19

*Mitchell v. King Packing Co.,*
  350 U.S. 260, 76 S. Ct. 337, 100 L. Ed. 282 (1956)........................................................23

*Murray v. City of N.Y.,*
  No. 16-cv-8072 (PKC), 2020 U.S. Dist. LEXIS 22783
  (S.D.N.Y. Feb. 10, 2020) ...............................................................................................24, 27

*Newton v. City of Henderson,*
  47 F.3d 746 (5th Cir. 1995) ......................................................................................7, 11, 13

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,*
  875 F.3d 107 (2d Cir. 2017)................................................................................................3

*Nieddu v. Lifetime Fitness, Inc.,*
  38 F. Supp. 3d 849 (S.D. Tex. 2014) ..................................................................................8

*Padilla v. Sheldon Rabin, M.D., P.C.,*
  176 F. Supp. 3d 290 (E.D.N.Y. 2016) ................................................................................19

*Parada v. Banco Indus. de Venez,*
  753 F.3d 62 (2d Cir. 2014)..................................................................................................19

*Perez v. City of N.Y.,*
  832 F.3d 120 (2d Cir. 2016)................................................................................................23

**Cases**                                                                                   **Pages**

*Perez v. City of New York, et al.*,
    12 Civ. 4914 (S.D.N.Y. 2017) ............................................................26

*Perez v. Mountaire Farms*,
    650 F.3d 350 (4th Cir. 2011) ...........................................................17

*Raczkowski v. TC Const. Co., Inc.*,
    8 F.3d 29 (9th Cir. 1993) ...............................................................5-6

*Reich v. S. New Eng. Telecomms. Corp.*,
    121 F.3d 58 (2d Cir. 1997)..........................................................16, 17

*Reich v. Waldbaum, Inc.*,
    52 F.3d 35 (2d Cir. 1995)................................................................19

*Rogers v. City of Troy*,
    148 F.3d 52 (2d Cir. 1998)..............................................................14

*Ruiz v. Citibank, N.A.*,
    93 F. Supp. 3d 279 (S.D.N.Y. 2015)..............................................27

*Seever v. Carrols Corp.*,
    528 F. Supp. 2d 159 (W.D.N.Y. 2007) ...........................................8

*Valcho v. Dallas County Hosp. Dist.*,
    574 F. Supp. 2d 618 (N.D. Tex. 2008) ...........................................8

*Wandering Dago, Inc. v. Destito*,
    879 F.3d 20 (2d Cir. 2018)................................................................3

*White v. Baptist Mem'l Health Care Corp.*,
    699 F.3d 869 (6th Cir. 2012) ...................................................5, 6, 7, 8

*Williams v. Epic Sec. Corp.*,
    358 F. Supp. 3d 284 (S.D.N.Y. 2019)............................................18

*Wood v. Mid-Am. Mgmt. Corp.*,
    192 F. App'x 378 (6th Cir. Aug. 1, 2006) ....................................7, 8

*Wright v. Coughlin*,
    132 F.3d 133 (2d Cir. 1998)..............................................................4

**Statutes**

29 C.F.R. § 778.106 ..............................................................14, 15, 29

**<u>Statutes</u>**                                                                    **<u>Pages</u>**

29 C.F.R. § 785.11 ...................................................................................5

29 C.F.R. § 785.48(a) .............................................................................5

29 U.S.C. § 201, *et seq.*.........................................................................1

29 U.S.C. § 203(o) .................................................................................23

29 U.S.C. § 207 .....................................................................................23

29 U.S.C. § 207(a)(1) ..............................................................................4

29 U.S.C. § 216(b) .................................................................................15

29 U.S.C. § 255(a) .................................................................................19

Fed. R. Civ. P. 41(b) .................................................................20, 21, 22

Fed. R. Civ. P. 56 ....................................................................................1

Fed. R. Civ. P. 56(a) ...............................................................................3

Fed. R. Civ. P. 56(c)(1)(A) .....................................................................3

Local Rule 56.1 ..................................................................................3, 18

## PRELIMINARY STATEMENT

Plaintiffs in this action are 36 current or former employees of the New York City Department of Correction ("DOC"), where they worked in the title of Motor Vehicle Operator ("MVO") at some point since July 18, 2016.  Generally, Plaintiffs allege that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") because (i) Plaintiffs were not compensated for all time worked ("Off the Clock Claim"); (ii) Defendant improperly calculated the regular rate of pay ("Regular Rate Claim"); (iii) the City paid overtime at a "straight time" rate, rather than at the rate of one-and-one-half times Plaintiffs' regular rate of pay ("Straight Time Claim"); and (iv) the City did not timely pay them overtime ("Prompt Payment Claim"). Finally, Plaintiffs allege that Defendant's conduct was willful and not in good faith, such that Plaintiffs are entitled to liquidated damages and a third year of recovery.

Notably, Plaintiffs' Off-the-Clock claim does not stem from the City's failure to pay overtime that was presented to it for payment through the City's electronic timekeeping system ("CityTime"), a step Plaintiffs acknowledge is necessary to generate payment.

Defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, as do Plaintiffs.  First, Defendant is entitled to summary judgment with respect to Count I (Off The Clock) because, as a matter of law, an employer does not suffer or permit work where, as here, the employer (i) establishes procedures for employees to record their time; (ii) asks employees to certify that the time they submit is accurate; and (iii) pays employees for the time reported and certified.  The record evidence shows that Plaintiffs failed to (i) record minutes allegedly worked in excess of their regular schedule as overtime and/or (ii) request overtime compensation for such time, which is contrary to both DOC and City policy—as well as the very certification they signed each week, regarding the accuracy of their time records.

Despite these failures, Plaintiffs seek to hold Defendant liable for overtime they, admittedly, never reported as time worked. This is not a case where the Plaintiffs were unaware of how to submit overtime requests, or were not permitted to submit overtime requests.  During the applicable time period, Plaintiffs submitted thousands of requests for overtime compensation, which amount to 41,130 hours of overtime work reported to Defendant.  Now, after Defendant has relied on the time records submitted by Plaintiffs to pay them for over 40,000 hours worked and more than $1.28 million in overtime compensation, Plaintiffs contend that they were, allegedly, underreporting the hours they worked.  This alleged underreporting—and Defendant's reliance on Plaintiffs' time records—should preclude Plaintiffs from recovering damages.  While Defendant recognizes it has a non-delegable duty to maintain accurate time records, Plaintiffs were paid exactly as they requested, and any alleged inaccuracies in Defendant's time records are solely due to Plaintiffs' failure to accurately record the time they worked.

Defendant is also entitled to summary judgment with respect to Plaintiffs' Regular Rate Claims. Plaintiffs allege that Defendant failed to properly calculate the regular rate at which overtime compensation is paid by not including the night-shift differential or vehicle differential payments.  However, Defendant properly included the differentials earned by Plaintiffs in the calculation of their regular rate of pay.  Similarly, Defendant is entitled to summary judgment on Plaintiffs' Straight Time Claims: Plaintiffs have adduced no admissible evidence of any miscalculation of their compensatory time or overtime cash calculations.  Defendant is entitled to summary judgment on Plaintiffs' Delayed Payment Claims because Plaintiffs have adduced no admissible evidence of any alleged "delay."

Defendant is entitled to summary judgment on Plaintiffs' claims of liquidated damages an additional year of recovery.  The record is clear that Defendant acted in good faith to comply with the FLSA.

Finally, Plaintiff Rivas should be dismissed from this action for his failure to appear for his deposition in defiance of this Court's order.

For all these reasons, discussed in greater detail below, Defendant's summary judgment motion should be granted, and Plaintiffs' summary judgment motion should be denied.

## STATEMENT OF FACTS

The material, undisputed facts in this case are set forth in the accompanying Defendant's Local Rule 56.1 Statement of Undisputed Material Facts ("Def.'s 56.1"); Defendant's Responses and Objections to Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts; the Declaration of Assistant Corporation Counsel Shawna C. MacLeod, dated October 13, 2020 ("MacLeod Decl."), and the supporting evidence cited therein; and the Declaration of Christopher Erath, dated October 13, 2020.

## ARGUMENT

The Court analyzes cross-motions for summary judgment separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018). Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue

of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

Although the moving party bears the initial burden to show that there is no genuine issue of

material fact, the non-moving party cannot rely in opposition on conclusory allegations or

speculation and must set forth specific facts, based on admissible evidence, showing that there is

a genuine issue of fact. *See Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998); *see also Fed.

Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) (noting that "mere speculation and

conjecture" cannot defeat a motion for summary judgment).

## POINT I

## SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANT

### A.    Plaintiffs' "Off the Clock" Claim Fails as a Matter Of Law

As set forth below, Defendant is entitled to summary judgment with respect to Count I as

a matter of law, because it is undisputed that the allegedly uncompensated work time at issue in

this case was not reported to the City through its timekeeping system, and the City therefore did

not have the requisite knowledge for Plaintiffs to establish liability.

### 1.    Knowledge of the Performance of Uncompensated Work Is a Prerequisite to a Finding of Liability For an Off-the-Clock Claim

The FLSA requires employers to compensate non-exempt employees with premium

overtime pay for any hours worked over 40 in a workweek.  *See* 29 U.S.C. § 207(a)(1). In order

to be found liable for unpaid overtime, however, the employer must have knowledge that the

work was performed. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) ("To

establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he

or she performed work for which he was not properly compensated, and that the employer had

actual or constructive knowledge of that work."); *Kosakow v. New Rochelle Radiology Assocs.,

P.C.*, 274 F.3d 706, 718 (2d Cir. 2001) (explaining that "an employee must be compensated for

time she works outside of her scheduled shift, even if the employer did not ask that the employee work during that time, so long as the employer 'knows or has reason to believe that the employee is continuing to work and that work' was 'suffered or permitted' by the employer") (quoting 29 C.F.R. § 785.11).  Indeed, it is common sense that "[a]n employer cannot suffer or permit an employee to perform services about which the employer knows nothing." *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998).

Notably, when time clocks or a time recording system are used, employees who voluntarily come in before the start of their shift or remain at work after their shift ends, do not have to be paid for such time periods unless they are engaged in work that the employer knew, or should have known, the employee was performing.  *See* 29 C.F.R. § 785.48(a).  An employer is permitted to disregard an early or late clock punching where the employer is not made aware that an employee was actually working.  *See id*.  Moreover, the recording of such time in a time keeping system is not unlawful.  *See id*.

This is critical in this case.  Plaintiffs contend that Defendant had actual or constructive knowledge of their alleged uncompensated work, in part, because Plaintiffs' supervisors could view their clock-in and clock-out times in CityTime, and that this is evidence that Plaintiffs were working.  Not so.  The FLSA explicitly permits employers to maintain a timekeeping system that records time not worked.  The fact that CityTime reflects time when Plaintiffs may be physically present at work, but not working, is of no issue to Plaintiffs' claims.

Importantly, an employer may be aware that an employee performed work outside of the employee's normal shift without knowing that the employee performed *uncompensated* work. *See White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 875 (6th Cir. 2012) ("[T]he relevant knowledge is not 'I know that the employee was working,' but "I know that the

employee was working and not reporting his time.'") (quoting *Raczkowski v. TC Const. Co., Inc.*, 8 F.3d 29 (9th Cir. 1993)); *Boelk v. AT&T Teleholdings, Inc.*, 2013 U.S. Dist. LEXIS 101111, *17 (W.D. Wis. Jan. 10, 2013) (Plaintiffs' statement that employees "were working through their lunches and breaks" does not establish that supervisor knew employees were working without pay) (citing *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (affirming summary judgment for employer where it knew plaintiff punched in early but not that plaintiff was performing work between the time she punched in and the scheduled start of her shift)).

Knowledge that an employee is working is not enough to establish liability under the FLSA. Rather, the employer must have knowledge that the employee is working and is also not being paid for such work. The record evidence does not demonstrate that Defendant knew Plaintiffs were working in excess of their shifts and not submitting overtime requests to be paid for such work in CityTime. Indeed, during the time period covering this lawsuit, Plaintiffs were paid for more than 41,130 hours of overtime. *See* Christopher Erath Decl. at ¶ 11(A). There is no evidence that Defendant knew Plaintiffs were working in excess of these tens of thousands of hours of overtime, and failing to request to be paid for such time.

## 2. As a Matter of Law, an Employer Does Not Have Actual or Constructive Knowledge of Time Spent Working that Was Not Reported Pursuant To Its Procedures

Plaintiffs' Off the Clock Claim is premised on the idea that Plaintiffs can thwart the City's efforts to comply with the FLSA by not giving notice that they performed uncompensated work outside of their regularly-scheduled shifts. But "[w]hen an employer has an established policy for tracking overtime, 'an employer is not liable for nonpayment if the employee fails to follow the established process.'" *Grosswiler v. Freudenberg-NOK Sealing Techs.*, 2015 U.S. Dist. LEXIS 109592, at *11 (N.D. Ohio Aug. 19, 2015), *aff'd*, 642 F. App'x 596 (6th Cir. Mar. 2, 2016) (quoting *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012)).

As the Sixth Circuit Court of Appeals explained, "[w]hen the employee fails to follow reasonable time reporting procedures, she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *White*, 699 F.3d at 877 (citing *Hertz v. Woodbury County*, 566 F.3d 775, 781-82 (8th Cir. 2009); *Newton v. City of Henderson*, 47 F.3d 746, 749-50 (5th Cir. 1995); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414-15 (9th Cir. 1981)).

In so holding, the Sixth Circuit embraced a practical, common sense approach, that is compatible with today's workplace realities which often include employees working at different worksites than their supervisors and coworkers.  In recognizing that when an employee fails to comply with the employer's efforts to ensure that employees are recording time accurately, the Sixth Circuit held the employer cannot be found to have "suffered or permitted" the employee to work:

> At the end of the day, an employee must show that the employer knew or should have known that he was working overtime or, better yet, he should report the overtime hours himself.  Either way, the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions.  An employer cannot satisfy an obligation that it has no reason to think exists.  And an employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid.

*White,* 699 F.3d at 875-76 (quoting *Forrester*, 646 F.2d at 414-15 and *Wood v. Mid-Am. Mgmt. Corp.*, 192 F. App'x 378, 381 (6th Cir. Aug. 1, 2006)).

The Sixth Circuit is not alone in holding that employees must comply with an employer's procedures for reporting time, and has been joined by circuit and district courts across the country in denying recovery where an employee fails to identify time worked using a timekeeping system specifically established by the employer for that purpose.  *See, e.g.*, *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 965 (5th Cir. 2016) (affirming judgment

for employer where employee failed to report her unauthorized overtime in the employer's timekeeping system); *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1230-31 (10th Cir. 2012) ("[W]here the employee fails to notify the employer through the established overtime record-keeping system, the failure to pay overtime is not an FLSA violation."); *White*, 699 F.3d at 877 (affirming summary judgment to employer where the employee was aware of her employer's system for reporting work that fell outside of her normal shift but failed to report such work); *Wood*, 192 F. App'x at 380-81 (affirming summary judgment for employer where employee failed to report off-the-clock hours using employer's reporting system); *Joza v. WW JFK LLC*, 2010 U.S. Dist. LEXIS 94419, at *33-34 (E.D.N.Y. Sept. 9, 2010) (holding that the employer was unaware of any overtime hours allegedly worked by the employee due to the employee's failure to comply with the employer's overtime reporting and compensation procedures); *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 170 (W.D.N.Y. 2007) (granting summary judgment on the plaintiffs' off-the-clock claims where "it [wa]s undisputed that [the employer's] record-keeping complied with the requirements of the FLSA and New York Labor Law, and that the plaintiffs' time records were maintained and paid exactly as plaintiffs fashioned them, meaning that any inaccuracies in [the employer's] records [we]re *solely due to the plaintiffs' deliberate failure to accurately report the time they worked*.") (emphasis in original).[1]  Indeed, the Fifth, Sixth, Seventh, Ninth, and Tenth Circuits all hold that an employer does not have actual or constructive knowledge that uncompensated work was being performed and not recorded

---

[1] *See also Grosswiler*, 2015 U.S. Dist. LEXIS 109592, at *11-12 (awarding summary judgment to employer and dismissing the employees' uncompensated overtime claim where the employees failed to comply with the employer's policy for tracking overtime); *Nieddu v. Lifetime Fitness, Inc.*, 38 F. Supp. 3d 849, 869-870 (S.D. Tex. 2014) (awarding summary judgment to employer on employee's claim for uncompensated overtime where the employee failed to follow the employer's established procedures for claiming overtime compensation); *Valcho v. Dallas County Hosp. Dist.*, 574 F. Supp. 2d 618, 623 (N.D. Tex. 2008) (hospital's policy of placing on its employees the responsibility of reporting the time that they worked was "legally sound.") (citing *Wood*, 192 F. App'x at 380-81 (dismissing FLSA claim involving employer who required employees to self-report overtime hours, and explaining that the employee "should [have] report[ed] the overtime hours himself")).

because the employees did not report the time, despite the employer's policies permitting them to do so. *See Allen v. City of Chi.*, 865 F.3d 936 (7th Cir. 2017), *aff'g Allen v. City of Chi.*, No. C. 3183, 2015 U.S. Dist. LEXIS 165906 (N.D. Ill. Dec. 10, 2015).

While the Second Circuit has not yet taken up this issue, Defendant respectfully submits that this Court should adopt the holding of the majority of U.S. Circuit Courts of Appeals, and the U.S District Courts for the Eastern and Western Districts of New York: when an employee fails to comply with the employer's efforts to ensure that employees are recording time accurately, the employer cannot be found to have "suffered or permitted" the employee to work. This common-sense approach to the FLSA takes into account the realities of modern workplaces. Many employees can now perform their work functions from their assigned worksite, their home computers, their cell phones or any combination thereof. As workplaces become more and more decentralized, it is imperative that employers be able to rely on the time records created and submitted by employees without running afoul of the FLSA.

The seminal Second Circuit case on an employer's duty to keep accurate time records is the 1959 decision in *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943 (2d Cir. 1959). In *Caserta*, the employer wholly delegated timekeeping responsibilities to the plaintiff and kept absolutely no independent record of the plaintiff's time. 273 F.2d at 945. That is not the case here, as the City has developed and implemented an electronic system to maintain time records.

Somewhat more recently, the Second Circuit held that an employer "cannot deny compensation even where the employee fails to claim overtime hours." *Holzapfel*, 145 F.3d at 524. However, the facts in *Holzapfel* are critically different from those in this case. In *Holzapfel*, the plaintiff, a K-9 Police Officer for the Town of Newburgh, was seeking overtime compensation for time he spent caring for his assigned police dog while at home. *Id*. It was the

policy of the Town of Newburgh to *only* pay K-9 officers for two overtime hours each week.  *Id*. Per this policy the plaintiff filled out his weekly overtime request in advance rather than submitting his actual overtime hours as they occurred.  *Id*. at 520.  As such, in *Holzapfel* the employer allowed employees to only request payment for two hours overtime per week regardless of how many overtime hours they actually worked.  For that reason, the Court held that the Town of Newburgh could not escape liability by arguing that the plaintiff failed to claim overtime hours when that failure was due to the Town's own policy restricting overtime to two hours per week.

In contrast, here, Plaintiffs requested overtime contemporaneously with, or shortly after, the time it was worked, and there is no pre-determined limit on the number of overtime hours for which Plaintiffs can submit payment.  In fact, it is undisputed that Plaintiffs are explicitly and repeatedly instructed to record and request overtime for all hours worked in excess of their shift. *See* Def.'s 56.1 at ¶¶ 63-72, 73-76.  Despite those undisputed facts, Plaintiffs now want to be paid for time they supposedly worked, but never reported to Defendant.  This is Plaintiffs' position even for days on which they did submit an overtime request.  By way of example, if a Plaintiff clocked out 30 minutes after their shift ended, but only requested 15 minutes of overtime pay, CityTime would: (1) process payment for the 15 minutes of overtime requested; and (2) reflect 15 minutes of "noncompensable time."  In this scenario, Plaintiffs claim that, under *Holzapfel*, this Plaintiff is entitled to 15 minutes of additional pay, despite the fact that the employee only requested 15 minutes of overtime compensation. However, the factual underpinnings here are so dramatically different from those in *Holzapfel* that Plaintiffs should not be permitted to extend *Holzapfel*'s holding to this case.

Judge Cote's decision in *Edwards v. City of New York* is also instructive, as it involves the same timekeeping system at issue here—the CityTime system. *See Edwards v. City of New York*, No. 08 CV 3134 (DLC), 2012 U.S. Dist. LEXIS 68055, *10-11 (S.D.N.Y. May 15, 2012). In that case, plaintiffs, who worked as correction officers, argued that they were denied compensation for overtime worked, but which did they did not report in CityTime.  In granting summary judgment to the City, the Court held:

> The plaintiffs were familiar with and utilized [CityTtime]; indeed, every deposed plaintiff testified that he or she had submitted overtime slips and received overtime compensation. The majority of deposed plaintiffs each received thousands of dollars in overtime during the limitations period. Some plaintiffs may on occasion have chosen not to submit overtime slips for minutes of overtime worked that did not exceed a certain arbitrary time threshold.  That fact, however, is insufficient to impute knowledge to the defendant that the plaintiffs were performing uncompensated overtime work.

*Edwards*, 2012 U.S. Dist. LEXIS 68055, at *10-11.

Here, as in *Edwards*, it is undisputed that Plaintiffs were familiar with the CityTime system, they knew how to submit overtime requests, and, in fact, did so on thousands of occasions.  Erath Decl. ¶11(D); Def.'s 56.1 ¶¶ 91-96.  Under Plaintiffs' theory of recovery, in order to avoid FLSA liability, Defendant would be obligated to investigate whether Plaintiffs were working during *any minutes* outside of their regular shifts that they were present at their worksite and during every single meal. Scaling this theory to the hundreds of thousands of City employees that use CityTime 365 days a year is untenable.  The law does not require an employer to open an investigation into every timecard submitted by an employee to verify the information the employee records—and certifies—is accurate.  And an employee cannot rest his claim on what the employer *could have done* to make sure the employee was accurately reporting his time.  *See Newton*, 47 F.3d at 749 ("If we were to hold that the City had

constructive knowledge that Newton was working overtime because [his supervisor] had the ability to investigate whether or not Newton was truthfully filling out the City's payroll forms, we would essentially be stating that the City did not have the right to require an employee to adhere to its procedures for claiming overtime.").[2]

### 3. Plaintiffs Failed to Provide the City with the Required Notice that They Performed Uncompensated Work

Plaintiffs seek overtime compensation for certain time outside of their regular shifts: (i) the time between when they clocked in and when their scheduled shift began; (ii) the time during the thirty-minute meal period that is automatically deducted from CityTime; and (iii) the time between the end of their shift and the time when they clocked out.  But the following facts are not in dispute: (1) Employees are paid on a "pay to schedule" system, whereby the default is that they are paid according to their regular shifts,  *see* Def.'s 56.1 at ¶ 39; (2) if employees work hours other than their regular shifts, they must submit requests for overtime compensation in CityTime, *see* Def.'s 56.1 at ¶¶ 47-49, 63-68; (3) Plaintiffs understood that in order to be paid for overtime worked beyond their regular shift, they were required to submit an overtime request in CityTime, s*ee* Def.'s 56.1. ¶ 87; and (4) Plaintiffs routinely used CityTime to submit requests for overtime compensation.  Def.'s 56.1. ¶¶ 88-90, 91-96.  In fact, over 97% of overtime requests collectively submitted in CityTime by Plaintiffs during the time period covering this litigation were approved.  *Id.* at ¶ 93; Erath Decl ¶ 11(G).

Thus, as indicated above, the only unpaid overtime compensation at issue in this case is that which Plaintiffs admittedly did not accurately report to the City, despite the fact that they

---

[2] *See also Fairchild*, 815 F.3d at 965 (computer usage reports were insufficient by themselves to put an employer on constructive notice that an employee was working off the clock); *Green v. Fed. Express Corp.*, 614 F. App'x 905, 908 (9th Cir. 2015) (electronic records reflecting scans of packages were not sufficient to put employer on constructive notice of off-the-clock work); *Hertz*, 566 F.3d at 781-82, 784 (employer was not required to review its electronic data for payroll purposes to determine whether employees were remotely working off the clock).

knew how to, and did, submit requests for overtime compensation in CityTime—and did so thousands of times, hundreds of which account for periods of overtime work for 15 or 30 minutes.  Def.'s 56.1 ¶ 92.  As in *Edwards*, Plaintiffs were clearly familiar with the procedure required for requesting overtime compensation, and did not do so.  *See* 2012 U.S. Dist. LEXIS 68055, at *10-11.

Allowing Plaintiffs' claim to proceed would drastically expand the scope of liability under the FLSA beyond anything contemplated by Congress or permitted under Supreme Court precedent, and render implausible any attempt by the City to meet its obligations under the FLSA by asking its more than 200,000 employees to adhere to a procedure for reporting overtime in order to receive compensation.  *See Newton*, 47 F.3d at 749.  Because the Plaintiffs failed to accurately record all of their time in CityTime, and affirmatively misrepresented that they had done so, the City is entitled to summary judgment, and Count I should be dismissed. *See Joza*, 2010 U.S. Dist. LEXIS 94419, at *34 ("Other than overtime compensation that might have been due her for overtime work she deliberately chose not to report, Joza was paid every penny of overtime she chose to report and process.  Consequently, judgment must be for defendants on all of plaintiff's claims.").

**B.    Plaintiffs' Regular Rate Claim Fails as a Matter of Law**

With regard to the Regular Rate Claims, Plaintiffs allege that Defendant failed to properly calculate the regular rate at which overtime compensation is paid by erroneously excluding the night-shift differential or vehicle-differential payments.  This is not so.  First, Plaintiffs have not adduced any admissible evidence that night-shift or vehicle differentials were excluded from the regular rate for calculating overtime.  Indeed, Plaintiffs appear to admit that the vehicle differential *was* included in Plaintiffs' regular rate of pay for the purposes of calculating overtime, and do not attribute any damages to the City's alleged failure to account for

vehicle differentials in calculating overtime pay.  Erath Decl. ¶ 11(L).  Any claims based on the alleged failure to include a vehicle differential in base pay should therefore be dismissed.

Second, as for the night-shift differential: the record is clear that the night-shift differential is included in the employees' regular rate of pay for the purposes of calculating overtime compensation, and Plaintiffs received $191,491 in night-shift differential payments— from a total of 28,531 instances of Plaintiffs' receiving the night-shift differential—during the relevant period.  *See* Erath Decl. ¶ 11(J); Def.'s 56.1 ¶ 95.  Accordingly, Defendant should be granted summary judgment on Plaintiffs' Regular Rate Claims.

**C.      Plaintiffs' Straight Time Claim Fails as a Matter of Law**

Plaintiffs have failed to adduce any evidence showing that the City paid overtime at a "straight time" rate, rather than at the rate of one-and-one-half times Plaintiffs' regular rate of pay.  None of the Plaintiffs have alleged that they did not receive the appropriate rate for their compensatory time, and none of them have submitted any evidence that their compensatory time was miscalculated.  By Plaintiffs' own calculations, Dr. Lanier asserts that only three Plaintiffs have negligible monetary damages for this claim—Toppin ($12.21), Nell ($398.54), and Jean ($7.12).  Plaintiffs' straight-time claim should be dismissed, or, in the alternative, the claim should be dismissed with respect to all Plaintiffs other than Toppin, Nell, and Jean.

**D.      Plaintiffs' Delayed Payment Claims Fail as a Matter of Law**

The FLSA requires that payment of overtime compensation "may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made." 29 C.F.R. § 778.106.  Thus, while the FLSA has been interpreted to require "prompt payment," there is no *per se* rule as to when payment must be made in relation to when it is earned. *See Rogers v. City of Troy*, 148 F.3d 52, 55-57 (2d Cir. 1998); *see also*

*Brennan v. City of Phila.*, 2016 U.S. Dist. LEXIS 80299, at \*4-6 (E.D. Pa. June 21, 2016). Contrary to the First Amended Complaint's claim that any overtime paid more than the next pay period after it is worked is considered late *per se*, courts have not set any bright-line rule defining what a reasonable delay in payment of overtime equates to in practice. *Brennan*, 2016 U.S. Dist. LEXIS 80299, at \*4–6. In *Brennan*, the court acknowledged that the DOL interpretation "allows that, '[w]hen the correct amount of overtime compensation cannot be determined until sometime after the regular pay period,' an employer can pay 'the excess overtime compensation as soon after the regular pay period as is practicable.'" *Id.* The court further noted, "As long as the overtime is paid as soon after the initial pay period as practicable, 'the requirements of the Act will be satisfied.'" *Id.* (citing 29 C.F.R. § 778.106).

Plaintiffs have adduced no admissible evidence of any alleged "delayed" payments. In fact, during the relevant time period, and using Plaintiffs' arbitrary 35-day standard for damage calculations, 99% of cash payments to Plaintiffs were received within 35 days after the date on which the overtime payments were earned. *See* Def.'s 56.1 ¶ 94; Erath Decl. ¶ 11(H). And according to Plaintiffs' own expert's calculations, the following Plaintiffs are not seeking damages for any allegedly late payments in this action: Plaintiffs Akhter, Blake, Calabro, Crucito, Echevarria, Jean, Mitchell, Monahan, Morency, Natoli, Nell, Ponton, Rodriguez, Rosario, Sanchez, Santiago, Stewart, Toppin, Trotman, and Wright. *See* Erath Decl. ¶ 11(R). Thus, the Court should dismiss Plaintiffs' Delayed Payment claims in their entirety, or, in the alternative, should dismiss the delayed-payment claims of the above-named Plaintiffs.

**E.    Liquidated Damages Are Not Recoverable Because Defendant Acted in Good Faith**

If a plaintiff successfully establishes a violation of the FLSA, liquidated damages in an amount equal to the amount of unpaid wages at issue are imposed, *unless* the employer establishes it acted in good faith.  *See* 29 U.S.C. § 216(b).  Liquidated damages under the FLSA

are not punitive.  Rather, federal liquidated damages serve to compensate plaintiffs for delays in receiving due wages.  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999).  To establish that an employer acted with the requisite subjective good faith, the employer must show that it took "active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them."  *Id.*; *see also Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) ("'Good faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them.").  Here, Plaintiffs should not be awarded liquidated damages because, for the reasons set forth above, they have not met their burden of establishing a violation of the FLSA with respect to Counts I, II, III, or IV.  And even if this Court finds that a question of fact exists sufficient to deny summary judgment to Defendant, the undisputed material facts show Defendant took active steps to ascertain and comply with the FLSA's requirements, precluding an award of liquidated damages on any claim.

### 1.  The City Demonstrated Subjective Good Faith

In developing CityTime, the City took steps to ensure that it would enable the City's FLSA compliance, including by:

- Providing CityTime training to all employees to ensure that they understood how to make an overtime request and that they were responsible for making all overtime requests in CityTime.  *See* Def.'s 56.1 at ¶¶ 73-79, 86, 104.

- In consultation with counsel, adding a certification to Plaintiffs' weekly timesheets, which was drafted by the City's chief labor and employment law counsel, requiring all employees to certify that the hours recorded on their timesheets are accurate and that they requested overtime for any hours worked outside of their regular schedule.  *Id.* at ¶ 70.

- Convening weekly meetings, composed of high-ranking members of OPA, OLR, and the Law Department, to ensure that CityTime is programmed in such a way that it complies with the FLSA.  *Id.* at ¶¶ 99-100; and

- Relying upon the advice of counsel to determine how to calculate the rate at which overtime is paid when employees receive differentials in addition to their salaries. *Id.* at ¶ 100.

Thus, the record evidence establishes that the City demonstrated subjective good faith in complying with the FLSA, through its reliance on the advice of counsel and internal personnel and labor relations experts in programming CityTime, inclusion of certification language, and the training employees on CityTime. *See McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 245 (4th Cir. 2016) (finding that the employer's consultation with an attorney regarding the employer's compliance under the FLSA, and the employer's subsequent reliance on the attorney's advice, constituted sufficient evidence of good faith to preclude an award of liquidated damages for the time period after the employer's meeting with the attorney); *Perez v. Mountaire Farms*, 650 F.3d 350, 375-76 (4th Cir. 2011) (affirming lower court's refusal to award liquidated damages because the employer relied on letters and memoranda provided by an outside attorney in implementing the practices that gave rise to the liability under the FLSA); *Cross v. Ark. Forestry Comm'n*, 938 F.2d 912, 917-18 (8th Cir. 1991) (finding that the employer's reliance on the incorrect advice provided by internal personnel experts established that the employer engaged in a subjective good faith effort to comply with the FLSA); *contra Reich*, 121 F.3d at 72 (noting the evidentiary record did not support a finding of good faith because "nowhere in [the employer's] briefs does [the employer] contend that it was relying on the advice of informed counsel"); *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 504 (S.D.N.Y. 2015) (holding that the evidence of the employer's good faith was insufficient because "the record contains no evidence as to the advice of prior counsel nor of whether [the employer] followed that advice"). In a recent decision, this Court declined to award liquidated damages to the plaintiffs, even after a finding of liability, because the evidence adduced demonstrated that the employer's Chief Executive Officer had taken "affirmative steps" to familiarize himself with "developments in

17

labor law," and that these efforts "demonstrate a good faith effort on [the employer]'s part to comply with labor laws." *See Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 303 (S.D.N.Y. 2019). Here, as detailed in Defendant's Rule 56.1 Statement, Ms. Pestana testified at length regarding the affirmative steps she and, in turn, the City took to ensure that the City's pay practices complied with the FLSA. *See, e.g.*, Def.'s 56.1 at ¶¶ 97-103. Such efforts, which went beyond the efforts discussed in *Williams,* demonstrate an objective good faith effort on the part of the City to comply with the applicable law.

### 2. Defendant's Conduct Was Objectively Reasonable

The undisputed evidence also establishes that City's belief that it was in full compliance with the FLSA was objectively reasonable. While Plaintiffs contend that they were not paid all of the overtime to which they were allegedly entitled, there is no dispute that when Plaintiffs requested overtime through CityTime, they were paid for that overtime. *See* Def.'s 56.1 at ¶¶ 90-96; Erath Decl. ¶ 11. Indeed, the evidence demonstrates that over 97% of the overtime requests made by Plaintiffs during the time period relevant to this lawsuit, were approved. *See* Def.'s 56.1 at ¶ 93; Erath Decl. ¶ 11(G). Further, because CityTime requires Plaintiffs to manually request overtime each time they work outside of their regular shift, it is undisputed that Plaintiffs understood how to make an overtime request in the CityTime system. *Id.* at ¶¶ 86-96. It is likewise undisputed that each Plaintiff certifies on a weekly basis that he or she has requested overtime for all hours worked. *Id.* at ¶¶ 63-68.

Therefore, even if the Court declines to dismiss any of Plaintiffs' claims, the City is nevertheless entitled to summary judgment on its good faith defense, precluding an award of liquidated damages, because the evidence establishes that it engaged in subjective good faith efforts to comply with the FLSA, and that those were objectively reasonable.

**F.      The Statute Of Limitations Should Be Restricted to Two Years**

The FLSA provides for a two-year limitations period that may be extended for one year only where the violation was willful.  29 U.S.C. § 255(a); *Herman*, 172 F.3d at 141. That the violation was not willful is not an affirmative defense, and it is, therefore, a plaintiff's burden to prove that the limitations period should be extended.  *See Parada v. Banco Indus. de Venez*, 753 F.3d 62, 71 (2d Cir. 2014).

"[T]o prove a willful violation of the FLSA within the meaning of § 255(a), it must be established that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Parada*, 753 F.3d at, 71 (quoting *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995)).   Even "[i]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." *See id.*; *Padilla v. Sheldon Rabin, M.D., P.C.*, 176 F. Supp. 3d 290, 299-300 (E.D.N.Y. 2016) ("[N]either an employer's good-faith but incorrect assumption regarding its FLSA obligations, nor an employer's lack of reasonable basis for believing that it was complying with the FLSA, is by itself sufficient to demonstrate an employer's willfulness.") (internal citation omitted).  Stated differently, an employer's negligence with respect to compliance is not enough to establish willfulness and a plaintiff must present evidence establishing that the employer affirmatively knew it was violating the FLSA.  *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 475 (S.D.N.Y. 2006). Plaintiffs cannot meet that burden here, and Defendant is entitled to the statutory two-year limitations period as a matter of law.

As addressed above in Section I.E, the same evidence that establishes Defendant's good faith efforts to comply with the FLSA precludes a finding that any alleged violations were willful.  There is nothing in the factual record showing that Defendant acted in reckless disregard

of the law.  To the contrary, Defendant took, and continues to take, substantial measures to ensure that it was and is fully compliant with the FLSA.  These measures include (i) requiring all employees to certify the accuracy of their weekly timesheets and that they have requested overtime compensation for all time worked in excess of their regular schedule; (ii) training employees on the CityTime system, including how to submit requests for overtime and certify the accuracy of timesheets; (iii) approving overtime regularly for all employees, including when it was not pre-authorized as required under City policy; and (iv) consulting extensively with counsel and informed personnel experts to ensure that City employees, including Plaintiffs, are paid in accordance with FLSA.  *See supra*, Section I.E.

Therefore, even if this Court does not grant summary judgment as set forth above, the Court should grant summary judgment as to the applicable limitations period, dismissing any claims predating two years from the filing of any respective Plaintiff's consent to sue.  *See Kadden v. VisuaLex*, LLC, 910 F. Supp. 2d 523, 543 (S.D.N.Y. 2012) (holding that a two year limitations period was automatic given finding that the employer acted in good faith); *Bowrin*, 417 F. Supp. 2d at 475 (granting motion for summary judgment that a two year limitations period should apply because "Plaintiffs have not presented evidence that [the employer] knew it was violating the FLSA"); *DeBejian v. Atlantic Testing Lab., Ltd.*, 64 F. Supp. 2d 85, 93 (N.D.N.Y 1999) (applying a two year limitations period because "[a]lthough . . . [the employer] did not take sufficient steps to ensure compliance with the FLSA, [it] did make an effort to ascertain whether its policies were in compliance and, therefore, it cannot be said that [the employer] recklessly disregarded whether its conduct violated the FLSA")

## G.   Plaintiff Rivas's Claims Should Be Dismissed for His Failure to Prosecute This Case

Rule 41(b) of the Federal Rules of Civil Procedure authorizes the district court to dismiss an action "[i]f the plaintiff fails to prosecute or to comply with [the] rules or a court

order." *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (internal quotation marks omitted). When considering a Rule 41(b) dismissal, the court weighs five factors: "(1) the duration of the plaintiff's failure to comply with the court order; (2) whether plaintiff was on notice that failure to comply would result in dismissal; (3) whether the defendants are likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard[;] and (5) whether the judge has adequately considered a sanction less drastic than dismissal." *Id.* (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)).

Plaintiff Rivas's claims should be dismissed.  First, Plaintiff delayed the case throughout late spring and summer 2020 by not alerting Defendant that he would require a Spanish-language interpreter for his deposition, and by subsequently failing to (i) schedule his deposition, (ii) conform to the Court's discovery schedule, and (iii) comply with the Court's orders.  Def.'s 56.1 ¶¶ 108-116.  Second, Defendant put Plaintiff Rivas on notice that it would seek his dismissal if he failed to schedule his deposition. Plaintiff was also served with Defendant's letters regarding Plaintiff's failure to schedule the deposition, as well as the Court's order directing him to appear. *Id*.  Third, as for prejudice, Defendant was unable to take Plaintiff Rivas's deposition before the close of discovery, and thus did not have relevant information for its summary judgment motion. In addition, since Defendant had expressly reserved five hours for Rivas of a 25-hour deposition limit, Defendant was also prejudiced because it was deprived of the opportunity to depose another Plaintiff in this action (only half the Plaintiffs in this action were deposed).  Fourth, the Court may resolve the action with respect to Plaintiff Rivas quickly and efficiently by dismissing his claims now, for his failure to appear for a deposition.  Indeed, "[i]t is not the function of this Court to chase dilatory plaintiffs while other litigants in this district"—or in this action—"seek

21

access to the courts." *Holcombe v. Skupien*, No. 14-cv-1448 (PAC) (JLC), 2014 U.S. Dist. LEXIS 170143, 2014 WL 6879077, at *3 (S.D.N.Y. Dec. 5, 2014) (quoting *Hibbert v. Apfel*, No. 99-cv-4246 (SAS). Finally, the usual sanction for failure to prosecute under Rule 41(b) is dismissal with prejudice, which is what Defendant requests here, as no lesser sanction would remedy Plaintiff Rivas's failure to prosecute his case. *See* Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, a dismissal under this subdivision (b) . . . operates as an adjudication on the merits.").

## POINT II

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

### A.   Plaintiffs Are Not Entitled to Summary Judgment on Their Off-the-Clock Claims

Plaintiffs argue that they are entitled to summary judgment on their Off-the-Clock claims because they performed compensable work outside of their regular shifts; Defendant had actual or constructive knowledge that Plaintiffs worked outside of their scheduled shifts, and did not pay them; and Defendant discouraged the reporting of overtime that was not pre-approved. *See* Pl.'s MOL at 7-16. None of these arguments is supported by the record.

### 1.   Plaintiffs Have Not Established They Performed Work Outside of Their Shifts

Plaintiffs argue that "[t]he work activities that [they] performed before and after their shifts, and the work completed during the unpaid meal periods, unquestionably constitute compensable work." Pls.' MOL at 6. Plaintiffs argue that they were performing compensable work from the moment they clocked in to Citytime when they arrived at their worksite to the moment they clocked out and left their worksite. This includes performing compensable work throughout every minute of every meal break. This theory is not supported by the record for several reasons. *First*, although Plaintiffs fail to mention it, multiple Plaintiffs actually testified

that they were not performing compensable work during these time periods.  For example, Plaintiffs testified that after punching-in to work, but before the commencement of their regular shifts, they spent between four and 20 minutes changing into their uniforms, which consist of pants, a button-down shirt, and boots.  Def.'s 56.1 ¶¶ 28-33.  Some MVOs changed out of their uniforms before punching out for the day.  Def.'s 56.1 ¶¶ 34.  Plaintiffs are allowed to commute in their uniforms, and many did so during the relevant period.  Def.'s 56.1 ¶¶ 30.  Given these facts, MVOs should not be compensated for changing into and out of their clothes.  The FLSA does not require payment for time spent on "activities which are preliminary to or postliminary to" an employee's principal activities, and the MVOs' uniforms are not "integral" or "indispensable" to the MVOs' principal activities, such that donning or doffing would be compensable under the FLSA.[3]  *See e.g.*, *Perez v. City of N.Y.*, 832 F.3d 120, 124 (2d Cir. 2016).

Even if Plaintiffs' donning and doffing were compensable work under the FLSA—which Defendant does not concede—§ 203(o) of the FLSA excludes changing clothes from the measured working time under § 207 if there exists express terms within a collective bargaining agreement ("CBA") or a "custom or practice" under the CBA regarding such nonpayment.  Here, Plaintiffs have never been compensated for time spent changing clothes—they are not required to change at work, and many Plaintiffs commute already in uniform.  This continuous history of nonpayment constitutes an "ongoing" "course of conduct" so as to qualify as a custom.  *See, e.g.*, *Arcadi v. Nestle Food Corp.*, 38 F.3d 672 (2d Cir. 1994).  As such, given that Plaintiffs admit

---

[3] An activity is "integral" if it is "intrinsically 'connected with'" a principal activity that an employee was hired to perform. *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 591 (2d Cir. 2007) (quoting *Mitchell v. King Packing Co.*, 350 U.S. 260, 262, 76 S. Ct. 337, 100 L. Ed. 282 (1956)).  And an activity is "indispensable" if it is "necessary" to the performance of a principal activity. *Id.* at 592. "An activity is therefore 'integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities.'"  *Perez v. City of N.Y.*, 832 F.3d 120, 124 (2d Cir. 2016) (quoting *Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 517 (2014)).

that they were performing non-compensable work during the time period in which they are seeking damages, Plaintiffs' motion must be denied.

*Second*, Plaintiffs do not establish as a matter of law that they were actually performing work before or after their shift, or during their meal breaks.  In their motion for summary judgment, Plaintiffs cite the testimony of only half of the Plaintiffs in this case regarding the alleged pre-shift, post-shift, and meal period activities, and assert that the testimony is somehow applicable to all the Plaintiffs in this action.  But the Plaintiffs in this case do not comprise a certified collective.  To the extent that this Court deems material the pre-shift, post-shift, and meal-period activities that were not submitted to CityTime as overtime requests, each Plaintiff's "claim turns on individualized, fact-intensive issues, including interactions with specific supervisors, work hours, and the nature of their job tasks." *Murray v. City of N.Y.*, No. 16-cv-8072 (PKC), 2020 U.S. Dist. LEXIS 22783, at *6 (S.D.N.Y. Feb. 10, 2020) (in a FLSA case where certification was denied, the Court denied plaintiffs' summary judgment motion in connection with their off the clock claims because plaintiffs failed to establish that, as a matter of law, each plaintiff was performing compensable work before/after their shift and during their meal breaks). Plaintiffs cannot use the testimony of 17 Plaintiffs to support the claims of the remainder of the 36 Plaintiffs (e.g., Pl.'s 56.1 ¶ 28), for whom they point to no evidence of off-the-clock work, particularly where Plaintiffs had different assignments, supervisors, and tours.

Moreover, for the Plaintiffs that do proffer evidence of alleged off-the-clock work, they cite only their own testimony that they were working off-the-clock without compensation to support their claims. *See* Pl. MOL at 13-16.  The crux of the testimony is that, in order to complete their assigned tasks, these Plaintiffs had to perform work outside of their schedule. *See id.*  However, Plaintiffs point to no evidence, other than their conclusory say-so, to support these

allegations.  Plaintiffs' argument is that they were working from the moment they punched-in to the moment they punched-out.  But Plaintiffs submit no timesheets showing they arrived at their worksite before their shift started or departed after their shift ended, or that they did not punch in or out for their meal break. Plaintiffs' failure to adduce evidence of off-the-clock work—other than, in some cases, their own testimony—warrants denial of Plaintiffs' motion as to Count I.

### 2. Plaintiffs Have Not Established that Defendant Knew They Performed Uncompensated Work

Even if Plaintiffs could establish that they were performing "work" before or after their shifts, or during their meal periods (which they have not done), Defendant did not have actual or constructive knowledge of such work. Plaintiffs argue that Defendant had actual knowledge that Plaintiffs were working beyond their shifts because supervisors witnessed such work. *See* Pl. MOL at 7-12. In support of this claim, however, Plaintiffs cite their own deposition testimony to supposedly establish which supervisors assigned them tasks and/or witnessed the performance of tasks that required them to work outside of their work schedules.  *Id.*  Notably absent from Plaintiffs' motion is any testimony from the Plaintiffs' supervisors attesting to this alleged fact. Also absent from the record is any documentary evidence supporting this claim. Plaintiffs point to no memoranda, such as memo book entries, documenting assignments given to them before or after their shift, or during their meal break.  And for the 18 Plaintiffs who were not deposed, Plaintiffs provide no evidence whatsoever of actual or constructive knowledge of their alleged uncompensated overtime work.

Moreover, Plaintiffs' abundant requests for overtime compensation demonstrate that the Plaintiffs knew how to request pay for overtime—and did so on a frequent basis, which is fatal to their claim.  *See* Def.'s 56.1 ¶¶ 91-96; Erath Decl. ¶ 11.  Because Plaintiffs routinely used the process established by Defendant to submit requests for overtime compensation, their

supervisors had no reason to doubt that Plaintiffs were not working in excess of what was reported as overtime. Granting Plaintiffs summary judgment in the face of these facts would render implausible any attempt by Defendant to meet its obligations under the FLSA in asking its hundreds of thousands of employees to adhere to a procedure for reporting overtime in order to receive compensation. Supervisors cannot be expected to observe each one of their employee's every move, and check their findings against the employee's certified timesheet.  Nor does the FLSA require such drastic micromanagement.

Finally, Plaintiffs' reliance on the decisions in *Foster v. City of New York*, Case No. 14-cv-4142 (S.D.N.Y.) ("*Foster*"), *De La Cruz v. City of New York*, Case No. 14-cv-9220 (S.D.N.Y) ("*De La* Cruz") (collectively "Foster/DLC Order") and *Perez v. City of New York, et al.*,12 Civ. 4914 (S.D.N.Y. 2017), Pls.' Ex. 12, is misplaced. With all due deference to the rulings in these cases, the decisions are not binding on this Court, and the issue of whether a plaintiff, who failed to use the employer's reasonable process to request overtime pay, may prevail on a summary judgment motion on a claim for non-payment of that overtime, without showing that use of the system was discouraged, has not been addressed by the Second Circuit.

For example, in finding that the evidence established that the City was aware that the plaintiffs in *Foster* and *De la Cruz* performed uncompensated overtime work, Judge Gardephe relied on the testimony *of supervisors* that they directly observed employees working outside their shifts, and were aware that they were doing so without compensation. *See Foster/De la Cruz* Order, Pls.' Ex. 12, at 42-44.  Multiple plaintiffs, including supervisors, also testified that the fact that work was being performed outside of scheduled shifts without compensation was openly discussed in meetings with supervisors.  *See id.* at 44.  Here, the record evidence does not

establish that Plaintiffs were discouraged from submitting requests for compensation for work performed outside of their shifts.

Because they cannot point to admissible evidence that they were discouraged from requesting compensation for all overtime, Plaintiffs point to Defendant's policy that overtime should be approved prior to being worked. But there is nothing unlawful about requiring an employee to obtain approval from a supervisor to work overtime in advance of the employee working such overtime. *See Ruiz v. Citibank, N.A.,* 93 F. Supp. 3d 279, 289-90 (S.D.N.Y. 2015). Further, Plaintiffs' argument ignores the fact that it is Defendant's policy to pay employees for overtime worked that was not pre-approved, and Plaintiffs here requested, and received, approval for overtime that was not pre-authorized. *See* Def.'s 56.1 ¶¶ 57-60, 90. Thus, Defendant's policy that overtime should be pre-approved has not served as a bar to the receipt of compensation for overtime when employees fail to seek such preapproval, and cannot be relied upon as evidence that Plaintiffs were prevented from seeking approval or compensation for overtime already worked.

### 3.  Plaintiffs Have Not Clearly Accounted for the Unpaid Overtime They Claim

Plaintiffs generally state that they have worked off-the-clock and should be compensated, but do not clearly account for the amount of unpaid overtime they claim. As recognized in *Murray.*,[4] 2020 U.S. Dist. LEXIS 22783 *38, the plaintiffs failure to "direct the Court to evidence of the actual hours and corresponding amount of unpaid overtime they claim to have worked and the resulting damages" necessitates the denial of plaintiffs' motion for summary judgment as to their off-the-clock claims, as they failed to satisfy their burden.

---

[4] The plaintiffs in *Murray* were represented by the same Plaintiffs' counsel in this action.

Plaintiffs here have similarly failed to satisfy their burden: they fail to advance any evidence of the actual hours of overtime worked and corresponding damages. Further, the fact that Plaintiffs took full one-hour work-free lunches—while only thirty minutes was deducted as an unpaid meal period—would have an impact on any alleged off-the-clock work Plaintiffs now allege they performed. For these reasons, Plaintiffs are not entitled to summary judgment on their Off the Clock Claims.

**B.      Defendant Properly Calculated the Regular Rate**

Plaintiffs argue that they are entitled to summary judgment with respect to their Regular Rate Claim because Defendant miscalculated the regular rate by failing to include the night-shift differential and vehicle differential payments in the calculation. *See* Pl. MOL at 14-15. Summary judgment should be denied to Plaintiffs, and granted to Defendant, for the reasons set forth in Section I.B, above. Contrary to Plaintiff's unsupported assertion that Defendant does not incorporate the night-shift or vehicle differential in its regular rate of pay, Pl.'s MOL at 15, Pl.'s 56.1 ¶ 84, Defendant *does* include the night-shift and vehicle differentials when calculating Plaintiffs' regular rate of pay. *See* Def.'s 56.1 ¶ 82. Plaintiffs simply argue that the "City's own payroll data show that the City fails to include vehicle differentials and night shift differentials in the Plaintiffs' regular rate." Pl.'s MOL at 15. In fact, Plaintiffs received $191,491 in night-shift differential payments during the relevant period. Erath Decl. ¶ 11(J). With respect to the inclusion of vehicle differentials' incorporation in the regular rate of pay: Plaintiffs seek no damages for vehicle differentials. Finally, Plaintiffs argue that summary judgment should be granted in the amount of $6,072, as to all Plaintiffs, but they provide no breakdown, nor the underlying data, used to arrive at this figure.

**C.      Plaintiffs Are Not Entitled to Summary Judgment on Their Straight Time Claims**

As for Plaintiffs' Straight Time Claim, Plaintiffs state merely that they are entitled to

summary judgment in the amount of $418 "[b]ased on defendant's payroll data." *See* Pl. MOL at 16. Plaintiffs received 2,230 total hours of compensatory time and more than $1.2 million in overtime payments during the relevant period. *See* Erath Decl. ¶ 11. And Plaintiffs provide no breakdown, nor the underlying data, used to arrive at the $418 they claim Plaintiffs are owed. Accordingly, Plaintiffs' motion for summary judgment with regard to the Straight Time Claims should be denied.

**D.      The Record Does Not Establish that Defendant Delayed Overtime Payments**

As discussed in Section I.D, above, the FLSA requires that payment of overtime compensation "may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made." 29 C.F.R. § 778.106. For the reasons stated above, and because Plaintiffs have submitted no admissible evidence of any alleged "delayed" payments, Defendant should be granted summary judgment on this claim.

Should the Court deny Defendant's motion on this claim, Plaintiffs' motion for summary judgment should also be denied. Acknowledging that, on occasion, the calculation of payments can take several pay periods, courts have denied summary judgment for plaintiffs on their prompt payment claims where genuine issues of material fact exist regarding the cause for delays in overtime payments, and whether such delays were caused by defendant's payroll systems or "uncontrollable factors, including the failure of plaintiffs to correctly record their overtime." *Conzo v. City of N.Y.*, 667 F. Supp. 2d 279, 288-89667 F.Supp.2d at 288–89.

Plaintiffs have submitted no payroll records demonstrating when overtime was worked and subsequently paid, and rely solely on the Lanier Declaration to allege certain instances of "late payments." But it is not "practicable" for Defendant to pay Plaintiffs their overtime until Plaintiffs themselves have submitted their timesheets and overtime requests. *Id.* at 288-89.

Indeed, although Plaintiffs baldly claim that "late" payments "resulted from the failure of the plaintiffs' supervisors and timekeepers to promptly approve overtime requests in CityTime so that the request can be processed by the payroll office," Pl. 56.1 ¶ 61, the record shows otherwise. The MVOs' CityTime Timekeeper testified that she "really ha[d]'t seen any [overtime requests] just sitting out there" because of a supervisor's failure to promptly approve them. Bruce Tr. at 129. Rather, she testified that when MVOs had complained about delayed payments, upon her review, she found that the MVOs had "never even input[] anything into the [CityTIme] system." Bruce 30(b)(6) Tr. at 134-35.  As such, there is at least a genuine issue of material fact regarding the cause of any delays in the overtime received by Plaintiffs, precluding an award of summary judgment on this claim.

**E.     Plaintiffs Are Not Entitled To Liquidated Damages**

Plaintiffs argue that the court should award them liquidated damages if they prevail in their motion because Defendant cannot demonstrate that they acted in good faith.  Plaintiffs are incorrect and Defendant respectfully refers the Court to Point I.E, above, for a complete recitation of the reasons why.

**F.     Plaintiffs Have Not Established That Any Violation Of The FLSA Was Willful**

As set forth above in Sections I.E and I.F, the record evidence establishes that Defendant took, and continues to take, substantial measures to ensure that it was and is fully compliant with the FLSA.  Therefore, Plaintiffs' motion should be denied, and the Court should instead grant summary judgment as to the applicable limitations period in favor of Defendant, dismissing any claims predating two years from the filing of any respective Plaintiff's consent to sue. *See Kadden v. VisuaLex, LLC*, 910 F. Supp. 2d 523, 543 (S.D.N.Y. 2012); *Bowrin*, 417 F. Supp. 2d at 475; *DeBejian v. Atlantic Testing Lab., Ltd.,* 64 F. Supp. 2d 85, 93 (N.D.N.Y 1999).

## CONCLUSION

**WHEREFORE**, Defendant respectfully requests that this Court grant summary judgment in favor of Defendant, and deny Plaintiffs' summary judgment motion, and dismiss Plaintiffs' claims in their entirety, because Plaintiffs have not adduced evidence demonstrating that Defendant violated the FLSA; or, in the alternative, grant Defendant's motion for summary judgment on its good-faith defense, precluding an award of liquidated damages; or, in the alternative, grant Defendant's motion for summary judgment and limit all Plaintiffs' claims to the statutory two-year limitations period; or, in the alternative, deny Plaintiffs' summary judgment motion; and award Defendant such other and further relief as the Court deems just and proper.

Dated:          New York, New York
                October 13, 2020

                                        **JAMES E. JOHNSON**
                                        Corporation Counsel of the
                                          City of New York
                                        Attorney for Defendant
                                        100 Church Street, Rom 2-111
                                        New York, New York 10007
                                        (212) 356-3187
                                        smacleod@law.nyc.gov

                            By:     */s/ Shawna C. MacLeod*
                                    Shawna C. MacLeod
                                    Assistant Corporation Counsel