```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
BRYAN NELL, et al.,                                         :
                                                            :
                                    Plaintiffs,             :      19 Civ. 6702 (LGS)
                                                            :
                    -against-                               :      **OPINION AND ORDER**
                                                            :
CITY OF NEW YORK,                                           :
                                                            :
                                    Defendant.              :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

The thirty-five individual Plaintiffs[1] contend that Defendant City of New York (the "City") violated the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"). Plaintiffs are current and former Motor Vehicle Operators ("MVOs") for the New York City Department of Corrections ("DOC"). Plaintiffs claim that the City willfully violated section 207 of the FLSA by (1) failing to pay Plaintiffs for all of their overtime hours (the "Unpaid Overtime" claim); (2) failing to provide overtime payments in a timely manner (the "Delayed Payment" claim); (3) providing overtime payments without accounting for night shift and vehicle differential pay (the "Regular Rate" claim); and (4) providing overtime payments at a straight rate, rather than one and one-half hours of compensatory time for each hour of overtime worked (the "Straight Time Claim"). The parties cross-move for summary judgement on all claims, and the City moves to dismiss Plaintiff Rivas's claim for failure to prosecute. For the reasons below, Plaintiffs' motion

---

[1] Plaintiffs include Yasmin Akhter, Johnny Almonte, Ronald Alston, Kevin Blackman, Andrew Blake, Alessio Calabro, Felix Cintron, Joseph Cooper, Antonio Crucito, Robert Echevarria, Faneua Jean, Yonah Jungreis, Rohan Kerr, Yevgeny Kotlyar, Ernest Littles, Bruce Mitchell, Elizabeth Monahan, Gerard Morency, Anthony Natoli, Bryan Nell, Ronald O'Neill, Arsenio Michael Padilla, Elvin Pena, Abdul Ponton, Dillon Reyes, Jorge Rivas, Sylvia Rodriguez, Antonio Rosario, Jose Sanchez, Jose Santiago, Donovan Stewart, Jamar Toppin, Lawrence Trotman, Sheinelle Watson and Dimitri Wright.

for summary judgment is denied. The City's motion for summary judgement is granted as to the Unpaid Overtime and Delayed Payment claims of Plaintiffs Akhter, Blackman, Blake, Calabro, Cintron, Echevarria, Jean, Kerr, Kotlyar, Morency, Padilla, Pena, Reyes, Rivas, Rodriguez, Rosario, Sanchez and Wright, but otherwise denied. The City's motion to dismiss Plaintiff Rivas's claims is denied.

I. BACKGROUND

The following facts are drawn from the parties' submissions, including their Local Civil Rule 56.1 statements, and are undisputed unless otherwise noted.

A. Time Recording and Payment

Plaintiffs are current or former MVOs who are assigned to drive vehicles in service of DOC operations on Rikers Island. Most MVOs are scheduled for eight-and-a-half-hour shifts, including an unpaid thirty-minute meal period.[2] MVOs are compensated based on a default "pay-to-schedule" system. Under that system they are paid based on their regular shift hours unless they indicate that they worked overtime or took time off, or pay is docked because they exceeded their five-minute grace period for late arrivals and early departures.

MVOs record their time using a system called CityTime, which MVOs "punch" into and out of each day. CityTime tracks time by the minute. In addition, MVOs can record the details of overtime worked using the "Overtime Requests" screen in CityTime. If an employee reports more than his or her total scheduled shift time and does not submit an overtime request, the excess time is categorized as "noncompensable." MVOs submit their timesheets at the end of

---

[2] Plaintiff Trotman is in a specialized unit and works forty-five hours per week, including a one-hour unpaid meal period.

each week.  In order to receive payment, the CityTime system requires employees to make a certification stating:

> The time shown correctly represents my attendance and activities for the week indicated.  If I am an employee eligible to earn overtime compensation under the FLSA and/or a collective bargaining agreement, I also certify that I have requested compensation for any time that I worked in excess of my scheduled hours and that any time outside my scheduled hours, i.e. when I may have logged in/out earlier/later than my scheduled time, for which I have not requested compensation, was not time worked.

### B.     Overtime Policies

The DOC Rules and Regulations provide that "[e]mployees will be granted overtime for any work performed in excess of the normal working hours, in accordance with contractual agreements."  It is City and DOC policy that employees, including MVOs, should request and receive pre-approval from a supervisor before working any time outside of their regular schedules.  The parties dispute, however, how the City handles requests for compensation for overtime hours worked that were not pre-approved.  The City asserts that it pays approved and unapproved overtime alike.  The record contains examples in which the City paid overtime that was not pre-approved.  For example, Plaintiffs Almonte, Mitchell and Watson testified during their depositions that they have received compensation for unapproved overtime that they submitted in CityTime.  Despite these examples, Plaintiffs contend that they are actively discouraged from submitting compensation requests for overtime work that were not pre-approved.  In support of their contention, Plaintiffs point to an employee orientation guide that states that "[e]mployees starting prior to their scheduled time will not get overtime credit without supervisory approval."  In addition, a few Plaintiffs, including Plaintiffs Littles and Monahan, testified that they either did not know, or were not instructed, that they could be paid for pre-shift, post-shift and/or mealtime work.

3

Overtime requests require two levels of approval -- first from the supervisor and then from the timekeeper. With the exception of Plaintiffs Alston, Stewart and Trotman, Plaintiffs were or are MVOs in the Transportation Division. For MVOs in the Transportation Division, Motor Vehicle Supervisor ("MVS") Hernandez and Motor Vehicle Manager ("MVM") Hilda Ortega perform the first-level review of CityTime timesheets. The Tour Commander for each MVO's shift is responsible for signing off on any paper "overtime slips."[3] Plaintiff Alston is an MVO in DOC's Special Operations Division and reports directly to Captain Spry; Plaintiff Stewart is an MVO in DOC's Inmate Property Unit and reports directly to Captain Margaret Williams; and Plaintiff Trotman is an MVO in DOC's Central Warehouse Operations Division and reports to Captain Germaine Walker. These Captains conduct first-level review of Plaintiffs Alston's, Stewart's and Williams's respective timesheets. For all Plaintiffs, DOC Timekeeping is responsible for providing the final approval of timesheets.

C. **Relevant Rates and Differentials**

Plaintiffs may request compensation for overtime work in the form of cash payment or compensatory time. Plaintiffs are entitled to an overtime premium rate of one and one-half hours for all hours worked over forty in a workweek or, alternatively, compensatory time at a rate of one and one-half hours for all hours worked over forty in a workweek.

---

[3] The record does not clearly explain the significance of approval of paper overtime slips as compared to CityTime overtime requests. The parties do not dispute that, "[a]though a Tour Commander provides authorization and sign-off for overtime on paper overtime slips for MVOs in the Transportation Division, the paper overtime slip is for the Tour Commander's purposes (i.e., for incorporation into a daily report); the paper overtime slip does not trigger payment in CityTime, and the Overtime Slip is not submitted to the MVSs, the MVM, or to the Timekeeper as part of the CityTime approval process." However, Plaintiff Natoli testified during his deposition that paper overtime slips serve as proof that the employee is, in fact, working overtime hours.

4

In addition, Plaintiffs are subject to a Citywide Collective Bargaining Agreement (the "CBA"), pursuant to which they are entitled to "a shift differential of ten percent (10%)" for all "scheduled hours worked between 6 P.M. and 8 A.M. with more than one hour of work between 6 P.M. and 8 A.M." (the "Night-shift Differential"). The CBA also provides that MVOs are entitled to a vehicle differential for driving different types of vehicles during their shifts (the "Vehicle Differential").

### D. Payments Plaintiffs Have Been Denied

In support of their claims, Plaintiffs provide expert testimony of Dr. Louis R. Lanier, who holds a Ph.D. in Applied Economics from Clemson University and was retained to analyze the payroll and timekeeping data provided by the City in order to calculate backpay owed to Plaintiffs. With respect to the Plaintiffs' claims, Dr. Lanier asserts the following:

- The backpay for Plaintiffs' uncompensated pre- and post-shift work from June 26, 2016, through May 9, 2020, totals $94,007.

- The backpay estimates for Plaintiffs' alleged uncompensated mealtime work, based on assumptions that Plaintiffs worked during one, two, three, four and five meal periods per week are respectively, $32,848, $71,324, $112,603, $155,373 and $198,113.

- The backpay for the City's failure to incorporate Night-shift and Vehicle Differentials is $6,072.

- The backpay for the City's failure to pay overtime at a rate of one-and-one-half times the standard rate is $418.

- The backpay for late overtime payments is $4,030.

The City disputes these figures. Plaintiffs did not submit the underlying data supporting these calculations or a breakdown of damages per Plaintiff.

### E. Plaintiff Rivas

Plaintiff Jorge Rivas's deposition was scheduled for June 8, 2020. During the first few minutes of his deposition, the Assistant Corporation Counsel ("ACC") representing the City halted the deposition and decided Mr. Rivas would need an interpreter. The City requested, and the Court provided, additional time for the City to depose Mr. Rivas. On June 29, 2020, the Court extended the parties' deadline to complete discovery "for the sole purpose of completing Plaintiff Rivas's deposition," and directed Mr. Rivas to communicate with his counsel to coordinate scheduling his deposition. On July 8, 2020, the ACC sent an e-mail to Plaintiff's counsel stating:

> As you are aware, the Court extended the deadline to depose Plaintiff Rivas until Friday, July 10 (ECF Dkt. No. 74 and 75). As I noted in my previous correspondence and my request to the Court, the reporting service requires 1-week to secure a translator. To date, I have not received availability for Plaintiff Rivas.
>
> Please advise no later than the end of business today whether you are going to voluntarily dismiss him from the action. If I do not hear from you, the City will move to dismiss Plaintiff Rivas.

On July 9, 2020, Plaintiff's counsel responded, stating, "We have not been able to schedule Mr. Rivas for his deposition. We do not agree to voluntarily dismiss him from the action."

## II. STANDARD

Summary judgment is appropriate where the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

6

*Inc.*, 477 U.S. 242, 248 (1986); *accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Liberty Lobby*, 477 U.S. at 248; *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

In evaluating a motion for summary judgment, a court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences and resolv[e] all ambiguities in its favor." *Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 164 (2d Cir. 2020) (internal quotation marks omitted). When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) (quotation marks omitted). "The same standard[s] appl[y] where, as here, the parties file [] cross-motions for summary judgment . . ." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001); *accord Lynch v. City of N.Y.*, 291 F. Supp. 3d 537, 545 (S.D.N.Y. 2018).

While Plaintiffs' claims all relate to their work as DOC MVOs, each Plaintiff's claim turns on individualized, fact-intensive inquiries, "including interactions with specific supervisors, work hours, and the nature of their job tasks." *See Murray v. City of N.Y.*, No. 16 Civ. 8072, 2020 WL 615053, at *1 (S.D.N.Y. Feb. 10, 2020). Accordingly, "[a]s to each plaintiff's claim, summary judgment may be granted only if the movant comes forward with evidence sufficient to warrant judgment as a matter of law, and then the non-movant fails to point out opposing evidence that would permit a reasonable trier of fact to rule in their favor." *Id*. (citing *Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).

## III. DISCUSSION

### A. Unpaid Overtime

The parties cross move for summary judgment on the claim that the City is liable under FLSA for failure to compensate Plaintiffs for unreported overtime -- specifically, pre-shift, post-shift, and mealtime work. Here, there are two distinct groups of Plaintiffs. The first group consists of Plaintiffs who did not submit any individualized evidence of overtime work; this group comprises Plaintiffs Akter, Blackman, Blake, Calabro, Cintron, Echevarria, Jean, Kerr, Kotlyar, Morency, Padilla, Pena, Reyes, Rivas, Rodriguez, Rosario, Sanchez and Wright (the "Group 1 Plaintiffs"). The second group consists of Plaintiffs who put forth individualized evidence -- specifically, deposition testimony -- showing that they worked at least some amount of uncompensated overtime; this group comprises Plaintiffs Almonte, Alston, Cooper, Crucito, Jungreis, Littles, Mitchell, Monahan, Natoli, Nell, O'Neill, Ponton, Santiago, Stewart, Toppin, Trotman and Watson (the "Group 2 Plaintiffs"). As outlined in more detail below, the Group 1 Plaintiffs' motion for summary judgment on the Unpaid Overtime claim is denied, and the City's motion as to these Plaintiffs is granted. The parties' cross-motions on the Group 2 Plaintiffs' Unpaid Overtime claim are denied.

The FLSA requires employers to pay non-exempt employees with premium overtime pay for hours worked over forty in a workweek. *See* 29 U.S.C. §207(a)(1). To establish liability for unpaid overtime under the FLSA, a plaintiff must (1) "prove that he performed work for which he was not properly compensated," and (2) show "that the employer had actual or constructive knowledge of that work" -- regardless of whether the work was properly recorded. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011); *accord Lawtone-Bowles v. City of N.Y.*, No. 16 Civ. 4240, 2020 WL 2833366, at *2 (S.D.N.Y. June 1, 2020). Whether an employer

possessed actual or constructive knowledge of overtime work is "an issue of fact." *Adams v. City of N.Y.*, No. 16 Civ. 3445, 2021 WL 1791182, at *4 (S.D.N.Y. May 5, 2021). Evidence showing actual or constructive knowledge varies, and "[i]n the absence of a company-wide policy or practice, plaintiffs will have to demonstrate that each individual manager had actual or constructive knowledge that plaintiffs were performing off-the-clock work without proper compensation." *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 468 (S.D.N.Y. 2011); *accord Murray*, 2020 WL 615053 at *8.

### 1. The Group 1 Plaintiffs

The City's motion for summary judgment is granted as to the Unpaid Overtime claims of Group 1 Plaintiffs, whose motion is accordingly denied. The Group 1 Plaintiffs have not provided any deposition testimony or other individualized evidence to show (1) that they performed work for which they were not properly compensated or (2) that their supervisors possessed actual or constructive knowledge that they did so. Although Plaintiffs provide Dr. Lanier's estimates of total backpay owed to the thirty-five Plaintiffs collectively, it is not possible to infer from Dr. Lanier's declaration whether each individual Plaintiff is entitled to any backpay. *See Kuebel*, 643 F.3d at 362 (requiring that at the summary judgment stage, an employee "present sufficient evidence to show the amount and extent of the uncompensated work as a matter of just and reasonable inference."); *accord Adams*, 2021 WL 1791182, at *6. Dr. Lanier's declaration is based on his analysis of payroll and timekeeping data and does not provide any insight into whether Group 1 Plaintiffs worked during all recorded hours or Group 1 Plaintiffs' supervisors had knowledge of their unpaid overtime work.

## 2. Group 2 Plaintiffs

The parties' motions for summary judgment as to the Group 2 Plaintiffs' Unpaid Overtime claims are denied. A plaintiff's recollection, if credited by a trier of fact, can be sufficient to show the plaintiff worked overtime without compensation. *Kuebel*, 643 F.3d at 362. The Group 2 Plaintiffs have put forth some evidence of unpaid overtime work.[4] However, for the reasons outlined below, summary judgment, in favor of either the Group 2 Plaintiffs or the City, on the Unpaid Overtime claim is denied.

### i. Evidence of Claimed Individual Damages

The Group 2 Plaintiffs' motion for summary judgment is denied because they have not supplied evidence of total overtime hours worked and individual damages. In seeking summary judgment, Plaintiffs must "show the amount and extent of [their uncompensated overtime] work as a matter of just and reasonable inference." *Murray*, 2020 WL 615053, at *11 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*). Here, the Group 2 Plaintiffs have not pointed to any clear personal recollections of the amount of overtime hours worked. Instead they rely on the Lanier Declaration, which provides proposed backpay amounts owed to Plaintiffs collectively. For example, the Lanier Declaration

---

[4] *See, e.g.*, Declaration of Gregory K. McGillivary, Dkt. No. 86 (S.D.N.Y. Sept. 9, 2020); Nell Deposition Tr., Dkt. No. 86-4, 77:4-14, 88:1-23 (testifying that he informed MVS Hernandez that he "ha[s] to start early because [he] ha[s] so much to do," and that "usually [he is] so busy [he] will just eat on the go"); Ponton Deposition Tr., Dkt. No. 86-5, 39:7-14 (testifying that he clocks in early, starts working "right away" even though he "shouldn't be working during that time"); Natoli Deposition Tr., Dkt. No. 86-4, 31:11-14, 62 (testifying that he performs a vehicle check "prior to starting the day" and that his supervisors have directed him to perform pre-shift work); Alston Deposition Tr., Dkt. No. 86-1, 81:1-5 (testifying that he has skipped meals to work); Littles Deposition Tr., Dkt. No. 86-3, Tr. 128 (testifying that he performs a pre-shift vehicle check); O'Neill Deposition Tr., Dkt. No. 86-4, Tr. 103 (testifying that he does not have time for a meal every day); Santiago Deposition Tr., Dkt. No. 86-5, Tr. 79:24-80:2 (testifying that he "do[es]n't have a meal break. The meal [he] ha[s] to eat as [he] go[es]. [He] ha[s] to squeeze it in").

proposes that Plaintiffs are owed $94,007 for pre- and post-shift work. In addition, the Declaration provides five proposals of backpay owed to Plaintiffs for mealtime work, based on assumptions that Plaintiffs worked one, two, three, four and five meals a week; respectively, the proposals are $32,848, $71,324, $112,603, $155,373 and $198,113. The very fact that the Lanier Declaration provides these options manifests a degree of uncertainty that precludes summary judgment. *See Murray*, 2020 WL 615053 at *11 (rejecting Dr. Lanier's calculations as sufficient to show individualized amounts of hours worked and damages and denying plaintiffs' motion for summary judgment).

      This issue is further complicated by an additional disputed fact -- whether CityTime records the time employees are present at their worksite or, alternatively, the time employees are actually working. Dr. Lanier's proposals are based on analysis of timekeeping data. However, based on the deposition testimony of Plaintiffs Nell, Alston, Cintron, Jungreis, Mitchell, O'Neil, Santiago, Stewart and Trotman, the City contends that after punching in, employees perform non-work activities like changing into their uniforms. The Second Circuit has held that changing into uniforms can be a work activity depending on the situation.[5] As a result, a triable issue of fact exists as to whether Plaintiffs were working during all recorded time.

---

[5] The FLSA requires that employers compensate employees for "the principal activity or activities which [an] employee is employed to perform," 29 U.S.C. § 254(a)(1). This includes tasks that are "an integral and indispensable part of the principal activities." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 30 (2005); *accord Perez v. City of N.Y.*, 832 F.3d 120, 123 (2d Cir. 2016). In the context of a FLSA case filed by Assistant Urban Park Rangers ("AUPRs") employed by the City's Department of Parks & Recreation, the Second Circuit held that "a reasonable factfinder could conclude that the plaintiffs' donning and doffing of uniforms are integral and indispensable to their principal activities as AUPRs," and that such a determination would involve consideration of the relevant collective bargaining agreement. *Perez*, 832 F.3d at 123, 125. Here, a similar issue of material fact exists.

### ii. Actual of Constructive Knowledge of Overtime Work

Even if the total amounts of hours worked and damages owed could be inferred from the Plaintiffs' deposition testimony, the Unpaid Overtime claims of Plaintiffs Almonte, Alston, Cooper, Jungreis, Littles, Mitchell, Monahan, O'Neill, Ponton, Santiago, Stewart, Trotman and Watson are denied because triable issues of fact remain as to supervisors' knowledge of their uncompensated work.

As a threshold matter, the City's argument that its procedures for time reporting absolve it of any liability for unpaid overtime that Plaintiffs did not report in CityTime is rejected as a matter of law. The City contends that it is entitled to summary judgment on any unpaid overtime claims because it established procedures for employees to record their time, asked employees to certify that the time they submit is accurate and paid employees for any time reported and certified. In support of this contention the City argues that it cannot be said to have notice of overtime work when Plaintiffs have failed to report it. This argument lacks merit and has been rejected in similar cases in this District. *See, e.g.*, *Adams*, 2021 WL 1791182, at *5 (rejecting the argument that "the City's procedures for reporting overtime absolves the City of liability"); *Murray*, 2020 WL 615053, at *12 ("the City's overtime-approval process and plaintiffs' successful use of that process does not preclude its liability"); *Worley v. City of N.Y.*, No. 17 Civ. 4337, 2020 WL 730326, at *7 (S.D.N.Y. Feb. 12, 2020) (LGS) ("Defendants' arguments have been expressly rejected by multiple courts within this Circuit regarding overtime claims by City employees who did not record some of their time in CityTime."); *Lawtone-Bowles*, 2020 WL 2833366, at *4 ("The City has made this argument repeatedly in FLSA overtime litigation in this District and it has been unanimously rejected."). The Second Circuit has held that an employer may have knowledge "even . . . where the employee fails to report his overtime." *Chao v.*

*Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008); *accord Adams*, 2021 WL 1791182, at *5. This is because the FLSA imposes a "non-delegable" duty on employers "to maintain accurate records of its employees' hours." *Kuebel*, 643 F.3d at 363; *accord Lynch*, 291 F. Supp. 3d at 546; *see also* 29 U.S.C. § 211(c) (requiring employers subject to the FLSA to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and [to] preserve such records"). The mere fact that the City has established procedures[6] that Plaintiffs have not followed does not absolve the City of liability for unpaid overtime.

In addition, with respect to the Unpaid Overtime claims of Plaintiffs Almonte, Alston, Cooper, Jungreis, Littles, Mitchell, Monahan, O'Neill, Ponton, Santiago, Stewart, Trotman and Watson, material issues of fact as to whether each manager had knowledge of unpaid overtime work preclude summary judgment in favor of either side. Whether an employer possessed actual or constructive knowledge of overtime work is "an issue of fact." *Adams*, 2021 WL 1791182, at *4. Evidence showing actual or constructive knowledge varies and "[i]n the absence of a company-wide policy or practice, plaintiffs will have to demonstrate that each individual manager had actual or constructive knowledge that plaintiffs were performing off-the-clock work without proper compensation." *Zivali*, 784 F. Supp. 2d at 468; *accord Murray*, 2020 WL 615053, at *8. Plaintiffs can meet this burden by relying primarily on deposition testimony. *Kuebel*, 643 F.3d at 362; *accord Worley*, 2020 WL 730326, at *5. Here, the Group 2 Plaintiffs have provided deposition testimony that their supervisors observed them working outside of their scheduled shifts. *See, e.g., Lawtone-Bowles*, 2020 WL 2833366, at *3.

---

[6] Although the City contends that it has established policies for reporting overtime, based on the record before the Court, it is not clear that Plaintiffs understand what to do in the event that they have not sought prior approval for overtime they have worked.

The City argues that, even if supervisors viewed the Group 2 Plaintiffs performing work outside of their scheduled shifts, the supervisors did not necessarily know whether Plaintiffs were uncompensated for this work, as Plaintiffs could have put in a request for overtime that was not pre-approved following the completion of the work. As to certain Group 2 Plaintiffs -- specifically Plaintiffs Nell, Natoli, Crucito, Alston and Toppin -- this argument is unavailing. For each of these Plaintiffs, the supervisors who viewed them performing, or were informed that they were performing, work outside of scheduled shifts were also the supervisors who approved their timesheets.

However, as to the remaining Group 2 Plaintiffs, the issue of knowledge turns on whether Plaintiffs may request overtime that has not been pre-approved, a fact the parties dispute. As the court in *Adams v. City of New York* explained,

> This dispute is material to the question of what a supervisor could be said to know on the basis of seeing an employee working during non-shift hours. If the employee could still later request overtime pay for that time, then the supervisor might have reason to believe that he or she would do so, and would not necessarily know whether or not the employee was working *without compensation*. If, by contrast, it was not realistically possible for an employee to make a request for overtime without preauthorization, then a supervisor who understands what work has or has not been preauthorized would know full well whether or not an employee was working overtime without compensation.

*Adams*, 2021 WL 1791182 at *8; *see also Campbell v. City of N.Y.*, No. 16 Civ. 8719, 2021 WL 826899, at *6 (S.D.N.Y. Mar. 4, 2021) ("[I]f Defendant had a policy or practice of denying [requests for overtime compensation that had not been preauthorized], then Defendant should have been aware that Plaintiffs would sometimes have to unexpectedly work overtime due to the emergent nature of their responsibilities and that these hours would go unpaid."). This dispute about whether Plaintiffs may request overtime that has not been pre-approved is an additional reason to deny the parties' motions for summary judgment as to the Unpaid Overtime claims of

14

Plaintiffs Almonte, Alston, Cooper, Jungreis, Littles, Mitchell, Monahan, O'Neill, Ponton, Santiago, Stewart, Trotman and Watson.

A. **Delayed Payment Claim**

The parties also cross-move for summary judgment on Plaintiffs' claims that the City did not pay overtime in a timely fashion, as required by the FLSA. The City's motion for summary judgment as to the Group 1 Plaintiffs' Delayed Payment claims is granted, and the Group 1 Plaintiffs' motion is accordingly denied. As to the Group 2 Plaintiffs' Delayed Payment claims, the parties' cross-motions for summary judgment are denied because an issue of fact remains as to the whether the City provided overtime payments as soon as practicable.

The FLSA requires employers to pay wages, including overtime, in a "timely fashion." *Rogers v. City of Troy*, 148 F.3d 52, 57 (2d Cir. 1998); *accord Lawtone-Bowles*, 2020 WL 2833366 at *4. The FLSA is satisfied "if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable." 9 C.F.R. § 778.106. This generally means that an employer must pay wages "within two pay periods." *Lynch*, 291 F. Supp. 3d at 552; *see* 9 C.F.R. § 778.106 (providing that "[p]ayment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made"). However, there is no required deadline by which to make payments, so long as payment is made as soon as "practicable." *See Lawtone-Bowles*, 2020 WL 2833366 at *4 (denying plaintiffs' motion for summary judgment where defendants supplied evidence that they made timely payments 96% of the time and there was a genuine dispute of fact as to whether sooner payment was impracticable).

15

The City's motion for summary judgment as to the Group 1 Plaintiffs is granted because they have not provided sufficient evidence to show that they did not receive overtime in a timely fashion. Without the benefit of deposition testimony or any other evidence from which a trier of fact could infer that Group 1 Plaintiffs were not paid as soon as practicable, the Group 1 Plaintiffs' claims fail.

Summary judgment is denied as to the remaining Group 2 Plaintiffs because the parties dispute whether the City paid overtime as soon practicable after the regular pay period. Plaintiffs contend they are entitled to $4,030 in liquidated damages and provide the deposition testimony of Plaintiffs who received late payments. *See, e.g.*, Declaration of Gregory K. McGillivary, Dkt. No. 86 (S.D.N.Y. Sept. 9, 2020); Jungreis Deposition Tr., Dkt. No. 86-2, 49:9-20 (replying "yes" when asked if ever "not paid for [overtime] in a timely fashion" but noting that such instances are "very rare"); Littles Deposition Tr., Dkt. No. 86-3, 113:11-20 (stating that there were instances in which he was "never paid for [overtime]" he requested); O'Neill Deposition Tr., Dkt. No. 86-4, 73:11-23 (stating that he informed his immediate supervisor that he did not receive overtime and that "it took a little time, but it came through"); and Santiago Deposition Tr., Dkt. No. 86-5, 45:2-10 (explaining that sometimes overtime is not on his check and he has "to call them immediately"). In contrast, Defendants assert that 99% of premium cash overtime requests were paid within 35 days after the date the overtime was worked. The City also points to testimony from the MVOs' CityTime Timekeeper, Joanna Bruce, that she "really ha[dn]'t seen [any overtime requests] just sitting out there" because of a supervisor's failure to approve them. This is enough to create a triable issue of fact warranting denial of the City's and the Group 2 Plaintiffs' cross motions for summary judgment on the Delayed Payment claim. *See Adams*, 2021 WL 1791182, at *9 (finding that "a triable issue of fact as to what caused any delay

16

of overtime payments, and whether the payments could practicably have been made sooner," existed); *Worley*, 2020 WL 730326, at *9 (finding a triable issue of fact where defendants asserted that "overtime cash payments were received within the thirty-five days of the date they were earned 97.9% of the time").

B.     **Regular Rate Claim**

The parties' cross-motions for summary judgment are denied on the claim that the City failed to account for Night-shift and Vehicle Differentials. "The regular rate of pay is the 'keystone' for calculating the rate at which overtime is paid under the FLSA." *Lynch*, 291 F. Supp. 3d at 547 (citing *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)). "An employee's regular rate of pay includes shift differentials," *Lynch*, 291 F. Supp. 3d at 547.

Here, the City maintains that CityTime automatically includes Night-shift and Vehicle Differentials in Plaintiffs' regular rate of pay for purposes of calculating overtime compensation. The City also asserts that Plaintiffs received $191,491 in Night-shift Differential payments from a total of 28,531 instances of Plaintiffs' receiving the Night-shift Differential. But "the mere fact that Plaintiffs were paid a significant amount of compensatory time does not preclude the City's liability for any time that was paid out at an unlawful rate." *Adams*, 2021 WL 1791182, at *9. Plaintiffs also dispute that the City automatically included Night-Shift and Vehicle Differentials in overtime compensation. In support of their motion for summary judgment, Plaintiffs point to the Lanier Declaration which states that Plaintiffs are entitled to $6,072 in backpay for the City's failure to incorporate Night-shift and Vehicle Differentials. However, the Lanier Declaration is insufficient to warrant summary judgment for Plaintiffs on the regular rate claim. First, the Declaration provides the proposed backpay owed to Plaintiffs *collectively*, and does not provide

17

any supporting data or breakdown as to the individual Plaintiffs. Second, Dr. Lanier's proposed methodology for calculating this backpay lacks sufficient clarity such that a reasonable juror could decline to credit Dr. Lanier's testimony. *See Adams*, 2021 WL 1791182, at *9 (finding that reasonable jurors could decline to credit Dr. Lanier's testimony based on a lack of clarity as to how he reached certain numbers); *Campbell*, 2021 WL 826899, at *8 (same). The bulk of Dr. Lanier's explanation is a restatement of FLSA requirements -- not an explanation of how he calculated backpay. Dr. Lanier's explanation does not include what data he used and how he calculated (1) overtime paid by the City and (2) overtime the City should have paid for each Plaintiff.

### C. Straight Time Claim

The parties cross-move for summary judgment on the claim that the City paid overtime at a straight rate, rather than at the time-and-a-half rate that the FLSA requires. The parties' cross-motions on the Straight Time claim are denied. The FLSA requires that employers compensate non-exempt employees for all hours worked over forty during a workweek, "at a rate not less than one and one-half times the regular rate at which [they] are employed." 29 U.S.C. § 207(a)(1); *see also* 29 U.S.C. § 207(o)(1) (requiring compensatory time at a rate "not less than one and one-half hours for each hour of employment for which overtime compensation is required," for employees in the public sector).

Again, Plaintiffs base their motion on Dr. Lanier's Declaration and assert that payroll data shows that Plaintiffs are collectively owed $418 in backpay for overtime provided at a straight rate. Because Plaintiffs have not provided a breakdown of this figure such that it is possible to determine which, if any, Plaintiffs are entitled to judgment in their favor, the parties' cross-motions are denied.

### D. Liquidated Damages and Willfulness

Because issues of fact preclude Plaintiffs' motion for summary judgment on all claims, there is no need to address the issue of liquidated damages and willfulness at this time. *See Adams*, 2021 WL 1791182, at *11 (finding "no reason . . . to depart from the general reluctance of courts to resolve the question of willfulness on a motion for summary judgment") (internal citation omitted); *Lawtone-Bowles*, 2020 WL 2833366, at *5 ("Because Plaintiffs' motion for summary judgment is denied on the underlying overtime violations, their motion for summary judgment on liquidated damages and willfulness is also denied.").

### E. Rivas's Claims

The City moves to dismiss the claims of Plaintiff Rivas pursuant to Federal Rule of Civil Procedure 41(b), for failure to prosecute, based on his failure to inform the City he would require a Spanish-language interpreter and his failure to appear for a rescheduled deposition. For the reasons outlined below the City's motion to dismiss is denied.

Rule 41(b) provides that "[i]f the plaintiff fails to prosecute . . . a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). In considering whether to dismiss an action or claims pursuant to Rule 41(b) the following factors must be considered:

> (1) the duration of the plaintiff's failures, (2) whether plaintiff had received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard and (5) whether the judge has adequately assessed the efficacy of lesser sanctions.

*LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001); *accord Rios v. Zion Farm LLC*, No. 19 Civ. 4363, 2021 WL 2383026, at *1 (S.D.N.Y. June 9, 2021). "Dismissal is a 'harsh remedy to be utilized only in extreme situations.'" *Rios*, 2021 WL 2383026, at *1 (quoting *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993)).

Here, the harsh remedy of dismissal is unwarranted. Rivas has participated in this litigation and initially appeared for his deposition. During that first appearance, the ACC determined that an interpreter was necessary and postponed the deposition. Rivas failed to reschedule and appear for his deposition after this initial postponement. If anything, Rivas's failure to appear has harmed his case, as the City's motion for summary judgment as to Rivas's Unpaid Overtime and Delayed Payment claims is granted on the ground that Rivas did not provide any individualized evidence in support of these claims. This result is sanction enough. The City has not been prejudiced, and there is no reason to take further action against Rivas whose only remaining claims are the Regular Rate and Straight Time claims.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' motion for summary judgment is DENIED. The City's motion for summary judgment is GRANTED as to the Group 1 Plaintiffs' Unpaid Overtime and Delayed Payment claims, but is otherwise DENIED. The City's motion to dismiss the claims of Plaintiff Rivas is DENIED. The following claims remain:

- Group 2 Plaintiffs' Unpaid Overtime claims,
- Group 2 Plaintiffs' Delayed Payment claims and
- all Plaintiffs' Regular Rate and Straight Time claims.

The Clerk of Court is respectfully directed to close the motion at Docket Nos. 83 and 92.

Dated: July 1, 2021
New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE