

Gregory K. McGillivary
gkm@mselaborlaw.com
McGillivary Steele Elkin LLP
1101 Vermont Ave., NW
Washington, DC 20005

November 12, 2021

**VIA ECF**
Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *Nell, et al. v. City of New York*, Case No. 19-cv-6702-LGS

Dear Judge Schofield:

      Pursuant to this Court's October 13, 2021, Order (Dkt. 121; *see also* Dkt. 124), Plaintiffs respectfully submit this letter on behalf of all parties regarding the proposed Settlement Agreement ("Settlement" or "Agreement") between the Plaintiffs and Defendant City of New York in the above-referenced Fair Labor Standards Act ("FLSA") case. For the reasons set forth below, the Settlement is fair and reasonable and should be approved. The signed Settlement Agreement (**Exhibit 1**), and a Proposed Order (**Exhibit 2**) are attached, along with supporting declarations from Plaintiffs' counsel Gregory K. McGillivary (**Exhibit 3**) and Hope Pordy (**Exhibit 4**), and a copy of the retainer agreement signed by all Plaintiffs (**Exhibit 5**). The parties now submit the Settlement Agreement for the Court's consideration pursuant to *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206 (2d Cir. 2015) and *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599-600 (2d Cir. 2020).

## I.    Claims Asserted and Procedural History

      Plaintiffs are 36 current and former employees of defendant City of New York's Department of Correction ("DOC") who work in the position of Motor Vehicle Operator ("MVO"). Plaintiffs work at the DOC Rikers' Island facilities delivering DOC mail and packages for DOC staff and inmates, transporting food from the warehouse to the kitchens and from the kitchens to the inmate facilities, transporting DOC employees, and transporting visitors to the facilities.

      On July 18, 2019, and at various times since, Plaintiffs filed their consent to sue forms with this Court. Dkts. 1, 8, 16, 17, 18, 20, 43, 53. Plaintiffs have alleged in this Lawsuit that Defendant failed to properly pay wages and overtime compensation under the FLSA, 29 U.S.C. § 201 et seq. Specifically, Plaintiffs allege that Defendant failed to compensate Plaintiffs for pre-shift work captured on the City's timekeeping system, CityTime, failed to compensate Plaintiffs for work performed during unpaid meal periods, failed to include night shift and vehicle differentials in the

November 12, 2021
Page 2

regular rate of pay, failed to pay for overtime work at a time and one-half rate (i.e., the City paid straight time), and delayed the payment of overtime compensation for weeks or months after the overtime was worked.

The parties engaged in extensive discovery including the exchange of written discovery and numerous depositions including the depositions of eighteen (18) Plaintiffs. The parties exchanged a significant number of documents including payroll documents, CityTime data, policies, procedures, personnel files, and vehicle trip sheets. The Plaintiffs took Fed. R. Civ. P. 30(b)(6) depositions of five designees in six sittings, on topics including timekeeping practices, job duties, training, documents and programs, meal period work, and FLSA compliance. Both parties' expert witnesses analyzed voluminous pay and hours worked data, exchanged expert reports, and were deposed. The parties then filed cross-motions for summary judgment, which the Court granted in part and denied in part. Following the Court's summary judgment decision, (Dkt. 115), the Court issued an order setting trial to commence on November 29, 2021. (Dkt. 116). The parties engaged in extensive settlement discussions to avoid the risks of trial and incurring additional legal expenses, and they have now reached a fair and reasonable settlement. Plaintiffs worked closely with a Settlement Team comprised of four Plaintiffs (Ernest Littles, Bryan Nell, Robert O'Neill, and Abdul Ponton), who all were approved of by the plaintiffs, and all plaintiffs have been notified of all of the settlement terms.

## II.      Terms of the Proposed Settlement Agreement

The Agreement provides that Defendant will pay a total Settlement Amount of **$673,313.54** to resolve the Lawsuit. Exhibit 1, ¶ 2.1. The Settlement Amount will be paid as follows: (1) a set of payroll checks and/or direct deposit payments made payable to each Plaintiff in accordance with Plaintiffs' Counsel's instructions constituting his or her share of the backpay award in the amount of **$134,324.93** ("the Backpay Amount");[1] and (2) one check in the amount of **$538,988.61** constituting liquidated damages, attorneys' fees, and litigation expenses, payable to Plaintiffs' Counsel ("Lump Sum Amount"). Ex. 1, ¶ 2.1(a)-(b). The Lump Sum Amount will be distributed as follows: (1) **$103,988.61** in liquidated damages to the individual plaintiffs, **$8,000.00** of which will be distributed in service awards to individual plaintiffs as described below; and (2) **$435,000.00** in fees and expenses including **$43,710.41** in out-of-pocket expenses to Plaintiffs' Counsel and **$391,289.59** in attorneys' fees. Ex. 1, ¶ 2.1(b).

The backpay and liquidated damages portion of the Settlement Amount were calculated by Plaintiffs' Counsel, based on Defendant's payroll records that were provided by Defendant through January 2, 2021, and then extrapolated to October 1, 2021, for those Plaintiffs who are still working for Defendant in the MVO position. The individual settlement damages are calculated as follows: For each week a Plaintiff worked as an MVO during the recovery period, the Plaintiff received one point. The recovery period is calculated for each Plaintiff by going back three years from the date a Plaintiff's consent-to-sue form was filed in Court up to October 1, 2021, or their last day of employment in the MVO position, whichever is earlier. Exhibit A to the Settlement is a chart reflecting the Plaintiffs' distribution amounts, including back pay and liquidated damages. The points were then divided by the amount of backpay of $134,324.93 to determine the dollar value

---

[1] Backpay Amount payments for Plaintiffs no longer employed by Defendant will be issued instead to Plaintiffs' counsel for disbursement to Plaintiffs.

November 12, 2021
Page 3

of a point for backpay and, separately, divided by the amount of liquidated damages of $103,988.61. In addition, out of the liquidated damages portion, all of the plaintiffs have agreed that the settlement team is entitled to a total of $8,000 total in service awards to four individual plaintiffs.[2]

Based on Plaintiffs' Counsel' calculations, which were derived from payroll records, documentary evidence, and Plaintiffs' testimony, and extrapolated through October 1, 2021, it is Plaintiffs' position that the total amount of damages for a three-year recovery period, estimating one unpaid meal period per week, for all Plaintiffs, is **$271,270.29**. However, the parties have agreed, for purposes of this settlement, that Defendant shall pay back pay in the amount of **$134,324.93** and liquidated damages in the amount of **$103,988.61**, for a total of **$238,313.54**. Exhibit 1, ¶ 2.1. This sum represents ***88%*** of the total recoverable back pay and liquidated damages. Declaration of Gregory K. McGillivary ("GKM Decl."), ¶¶ 3, 8.[3]

In consideration and exchange for this Settlement, the Plaintiffs agree to release the Defendant for all wage and hour claims, as well as claims for attorneys' fees and costs, through October 1, 2021. Ex. 1, ¶¶ 3.1-3.4.

Each of the Plaintiffs have been informed of the methodology for calculating damages and their individual recovery amounts, based on the City's timekeeping and payroll data and the recovery period "points" calculations set forth above, as well as the amount of attorneys' fees and expenses and service awards. GKM Decl., ¶¶ 5-7. There have been no objections or disputes and the Plaintiffs have agreed to all terms of the Settlement Agreement. GKM Decl., ¶ 7.

---

[2] The methodology of using weeks of employment during the relevant statute of limitations period to determine the Plaintiffs' amounts is the methodology used in other FLSA cases involving complicated off-the-clock claims and a variety of different claims. *See, e.g., Worley et al. v. City of New York and NYPD,* Case No.: 17-cv-4337 (LGS) (S.D.N.Y. June 8, 2020) (approving settlement agreement for NYPD School Safety Agents using same distribution methodology); *Perry v. City of New York,* Case 1:13-cv-01015 (VSB) (S.D.N.Y. February 13, 2020) (approving settlement agreement for FDNY Fire Inspectors using same distribution methodology); *Jones v. New York City Housing Authority*, 1:17-cv-3683 (JGK) (S.D.N.Y. December 17, 2018) (approving FLSA settlement agreement for NYCHA housing assistants using same distribution method); *Brown v. New York City Housing Authority*, 1:16-cv-9263(RA) (S.D.N.Y. September 14, 2018) (approving FLSA settlement agreement for 856 NYCHA maintenance workers and heating plant technicians using same distribution method); *Johnston v. New York City Housing Authority,* 1:16-cv- 9924 (S.D.NY. January 19, 2018)(approving settlement agreement using same distribution methodology at issue here for NYCHA Exterminators); *Small v. City of New York,* 1:14-cv-3469 (S.D.N.Y. May 15, 2015) (approving settlement of FLSA claims by NYPD police sergeants using same distribution methodology used here); *Mullins v. City of New York*, 1:06 cv 20238 (SAS) (same).

[3] Because the only available remedy for the late payment claim is liquidated damages, the total recoverable liquidated damages ($136,945.36) slightly exceeds the total recoverable back pay ($134,324.93). The Settlement sums reflect 88% of the combined total, but individually reflect 100% of the recoverable back pay and 76% of the recoverable liquidated damages.

November 12, 2021
Page 4

### III. Applicable Factors for Approving FLSA Settlements

A settlement in an FLSA collective action is not effective unless it is approved by either a district court or the United States Department of Labor. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599-600 (2d Cir. 2020); *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206 (2d Cir. 2015). "As a result, district courts in this Circuit routinely review FLSA settlements for fairness before approving any stipulated dismissal." *Id.* "Generally, there is a strong presumption in favor of finding a settlement fair, because the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted).

Courts evaluating whether FLSA settlements are reasonable consider the following factors:

(1) the Plaintiffs' range of possible recovery;
(2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;
(3) the seriousness of the litigation risks faced by the parties;
(4) whether the settlement is the product of arm's-length bargaining between experienced counsel; and
(5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic*, Inc., 900 F. Supp. 2d at 336; *Fisher*, 948 F.3d at 599-600 ("District courts typically evaluate the fairness of a settlement agreement by considering the factors outlined in *Wolinsky* . . . ."). Importantly, under the Second Circuit's recent *Fisher* decision, "[w]hen presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." *Fisher,* 948 F.3d at 606.

### A. Application of the *Wolinsky* Factors to the Settlement

As discussed below, the proposed Settlement is fair and reasonable to Plaintiffs and Defendant.

#### i. Plaintiffs' Possible Range of Recovery

The Total Settlement is $673,313.54, allocated as $134,324.93 in backpay, $103,988.61 in liquidated damages, including $8,000.00 to be distributed as service awards to the Settlement Team, $391,289.59 in attorneys' fees, and $43,710.41 as reimbursement of expenses. Thus, $238,313.54 is allocated to the Plaintiffs as back pay and liquidated damages, including service awards ("Plaintiffs' Recovery"). GKM Decl., ¶ 3. Per Plaintiffs' independent calculations based on an expanded, three-year statute of limitations, this sum represents 88% of the recoverable back pay and liquidated damages, plus attorneys' fees and costs. Looked at another way, this sum represents a recovery of 100% of the recoverable back pay and 76% liquidated damages, plus attorneys' fees and costs. GKM Decl., ¶ 8.

Considering the risks associated with trying these claims and establishing damages, this amount is clearly reasonable. *See Rojas v. Pizza Pete's LLC*, 2019 U.S. Dist. LEXIS 149717, 2019 WL 4447578, at *5 (net settlement of 36% of total alleged is "clearly reasonable given the

November 12, 2021
Page 5

uncertainties inherent in any litigation"); *Chowdhury v. Brioni America, Inc.*, 2017 WL 5953171, at *2 (S.D.N.Y. 2017) (net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486, at *2 (S.D.N.Y. 2017) (net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Felix v. Breakroom Burgers & Tacos*, 15 Civ. 3531, 2016 U.S. Dist. LEXIS 30050, at *2 (S.D.N.Y. 2016) (net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable).

The Settlement Amount is based on the damages calculations prepared by the Plaintiffs' expert damages witness, Dr. Louis Lanier, which were reviewed by Defendant's expert witness, Dr. Christopher Erath, as part of the parties' arm's-length negotiations. The Settlement Amount is based on the maximum three-year statute of limitations on all claims (i.e., three years prior to the date each Plaintiff's consent-to-join form was filed in court through October 1, 2021, or the Plaintiff's last date of employment with the Defendant, whichever is earlier). GKM Decl., ¶ 3. To achieve this outcome at trial, Plaintiffs would have been required to prove that Defendant willfully violated the law; otherwise, a two-year statute of limitations would apply. 29 U.S.C. § 255 (a). *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

At trial, Plaintiffs would have to prove liability for each of their claims, the amount of backpay owed as a result of the violations, as well as whether a two or three-year recovery period applied. The Court would have then determined whether liquidated damages were owed.

Significantly, even if the jury ruled in Plaintiffs' favor, the jury may have found that these violations were not willful, resulting in a two-year rather than three-year recovery period, and it is possible that the Court may not have awarded liquidated damages. Although Plaintiffs are confident in the strength of their case, they acknowledge that they faced significant risk at trial at each stage of the analysis.

In light of these litigation risks, the recovery for these claims under this Settlement represents an excellent result for Plaintiffs.

### ii.   Avoiding Anticipated Burdens and Expenses

Litigating FLSA claims and damages at trial would be a fact-intensive process demanding additional costly litigation by both parties. Without this Settlement, both parties would need to spend a lengthy period of time and resources to prepare for trial, including meeting with and preparing each of the individual Plaintiffs for trial testimony, preparing trial exhibits, preparing motions *in limine*, preparing pre-trial briefing, drafting jury instructions, *voir dire*, and a verdict form, preparing opening statements, presenting the case to a jury, preparing summation, presenting the issue of liquidated damages to the Court for a decision, likely post-trial motions practice, and possible appeal. In short, the anticipated burdens and expenses on both parties were significant.

### iii.   Seriousness of Litigation Risks

As noted above, there was no guarantee of success on either side on Plaintiffs' Uncompensated Pre-Shift Overtime Claim, Meal Period Claim and Regular Rate Claim, as well as the issues of whether the Defendant's violations on all claims were willful and lacked good faith and reasonableness. Given the uncertainty over the potential outcome, both parties were motivated to settle this dispute.

November 12, 2021
Page 6

### iv.  Arm's-Length Bargaining

Both parties engaged in good faith, arm's-length negotiation in reaching this Settlement. Counsel for both parties negotiated settlement terms over the course of several months, until a tentative settlement was reached. GKM Decl., ¶ 2.

Ultimately, the parties reached an agreement in principle and the settlement terms were then approved by the individual Plaintiffs. GKM Decl., ¶ 2. Plaintiffs' Counsel communicated frequently with the Settlement Team over the course of negotiations, informed all plaintiffs of the proposed terms of settlement in writing including how the individual settlement amounts were calculated, and responded to any individual questions or inquiries. GKM Decl., ¶¶ 2, 5-7.

### v.  Possibility of Fraud or Collusion

Given the parties' arm's-length negotiating and the parties' good faith participation in settlement discussions, there was no opportunity for fraud or collusion. The parties represented their clients zealously and obtained what both parties consider to be a fair and reasonable Settlement consistent with standards established in the Second Circuit for FLSA settlements.

### B.  The Service Awards to the Settlement Team Plaintiffs are Appropriate[4]

Courts in this Circuit have recognized that, "[i]n FLSA collective actions, just as in Rule 23 class actions, service awards are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *See, e.g., Sanz v. Johnny Utah 51 LLC*, 2015 WL 1808935 (S.D.N.Y. 2015) (quoting *Diaz v. Scores Holding Co., Inc.*, 2011 U.S. Dist. LEXIS 112187, at \*3-4 (S.D.N.Y. 2011)).  This Court has regularly approved service awards to representative plaintiffs totaling up to 9.1% of the settlement amount. *See, e.g., Johnson v. Brennan,* 2011 WL 6399468, at \*2, 21 (S.D.N.Y. 2011) (incentive payments totaling 9.1% of a $440,000 FLSA/NYLL settlement).

The Service Awards will be provided to the four Settlement Team members, all of whom served the collective by leading the initial investigation of the case to identify facts in support of all claims, participating in extensive discovery and spending substantial time reviewing and evaluating settlement terms with Plaintiffs' Counsel, amongst themselves, and with the other Plaintiffs. GKM Decl., ¶ 4. The Plaintiffs have agreed that each of the four Settlement Team members are entitled to $2,000, which results in a total of $8,000 total in service awards.

Specifically, the Settlement Team not only spent time investigating and responding to written discovery requests, searching for documents, meeting with counsel to discuss their claims, meeting with counsel to prepare for depositions, and sitting for lengthy depositions, they also invested additional time participating in the settlement discussions including conferring with Plaintiffs' Counsel, reviewing damages calculations, assessing the various settlement proposals and counter proposals and facilitating in recommending a settlement to the other plaintiffs. GKM

---

[4] Defendants take no position regarding the Service Awards provided to the Settlement Team and Discovery Plaintiffs as these awards are made pursuant to agreements solely between Plaintiffs' and their counsel.

November 12, 2021
Page 7

Decl., ¶ 4. Each Settlement Team member will receive a $2,000 Service Award, for a total of $8,000. *Id.* Therefore, the Service Awards, totaling **$8,000**, equal barely one percent (1.19 %) of the $673,313.54 Settlement Amount. *Id.* All of the 36 Plaintiffs in this case have been informed of these payments, and none have objected to the Service Awards. GKM Decl., ¶¶ 5-7.

As this Court explained in awarding service payments to plaintiffs involved in filing and litigating similar claims, "in a wages and hours case, where a low level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, such awards are singularly appropriate." *Henry*, 2014 U.S. Dist. LEXIS 72574, at *11. Service awards "fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take." *Flores v. Anjost Corp.*, 2014 WL 321831, at *27 (S.D.N.Y. 2014). As such, service awards are common in the Second Circuit. *See, e.g.*, *Bryant v. Potbelly Sandwich Works, LLC*, 2020 WL 563804, at *22 (S.D.N.Y. 2020) (approving service awards between $2,500 and $5,000 to participating plaintiffs); *Cruz v. Sal-Mark Rest. Corp.*, 2019 WL 355334 at *21 (N.D.N.Y. 2019) (approving as reasonable $5,000 service award to plaintiff); *Sealock v. Covance, In*c., Civil Action No. 17-cv-5857 (JMF), 2020 U.S. Dist. LEXIS 44753, at *11-12 (S.D.N.Y. 2020) (approving $10,000 service award to plaintiff).

Here, the Settlement Team took a risk in not only coming forward and suing their employer but in being actively engaged in the litigation and confronting their employer about their allegedly unlawful practices. GKM Decl., ¶ 4. Their willingness to serve the class as Settlement Team members and in discovery resulted in achieving favorable results in this litigation, as described above. Under well-established Second Circuit precedent, the Settlement Team Plaintiffs are entitled to the Service Awards sought in this settlement.

### C.  Attorneys' Fees and Expenses[5]

#### i.  Under *Fisher* and *Wolinsky* Attorneys' Fees are Reviewed for Reasonableness

"Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA . . . ." *DeLeon v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 65261, at *5 (S.D.N.Y. May 7, 2015) (citing *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) for "commending the general 'sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.'"); *See Bozak v. FedEx Ground Package Sys.*, 2014 WL 3778211, at *16 (D. Conn. 2014) ("Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel."); *Capsolas v. Pasta Resources Inc.*, 2012 WL 4760910, at *8 (S.D.N.Y. 2012) (fee request of one-third is "consistent with the norms of class litigation in this circuit").

---

[5] Defendant takes no position regarding Sections III(B) and (C) of this letter other than to state that Defendant agrees to pay fees in the amount of $391,289.59 and costs in the amount of $43,710.41.

November 12, 2021
Page 8

"In an individual FLSA claim, where separate amounts are set forth for the payments of unpaid wages and payments for attorneys' fees, the Court has greater flexibility in exercising its discretion in determining the reasonableness of the attorneys' fees. In other words, there is a greater range of reasonableness for approving attorney's fees in an individual action where the parties settled on the fee through negotiation." *Misiewicz v. D'Onofrio Gen. Contractors Corp.*, No. 08 CV 4377 (KAM)(CLP), 2010 U.S. Dist. LEXIS 60985, at *14-16 (E.D.N.Y. May 17, 2010). Here, the Plaintiffs and Defendant negotiated attorneys' fee separately from the individual Plaintiffs' recovery and settled on the fee amount of $391,289.59, and this amount is separate and distinct from the backpay and liquidated damages allocated to the Plaintiffs under the Settlement Agreement.

Moreover, in *Fisher v. SD Prot. Inc*., 948 F.3d 593, 605 (2d Cir. 2020), the Second Circuit clarified that there is no cap on the amount of attorneys' fees to be recovered in an FLSA settlement, and held that a district court abuses its discretion by rewriting and reallocating funds, including attorneys' fees, under a settlement agreement negotiated between the parties.

The Court held that "a district court may not simply rewrite the terms of a settlement agreement because a 'settlement agreement is a contract that is interpreted according to general principles of contract law.'" *Id.* at 605. "If the 'terms of a contract are clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself.'" *Id.* (*quoting Lilly v. City of New York*, 934 F.3d 222, 235 (2d Cir. 2019)). Thus, "[w]hen presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." *Id.* at 606. The Court emphasized that "even though a district court has a duty to review an FLSA settlement for reasonableness to prevent any potential abuse, this does not grant the court authority to rewrite contract provisions it finds objectionable." *Id.*

The measure of court approved attorneys' fees is, of course, "reasonableness." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d at 336 ("Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award."); *see also Camacho v. Ess-A-Bagel, Inc.*, 2014 U.S. Dist. LEXIS 171649, 2014 WL 6985633, at *1 (S.D.N.Y. Dec. 11, 2014) ("District courts must evaluate whether a proposed FLSA settlement is 'fair and reasonable' and whether any concomitant award of attorneys' fees is reasonable."). The parties have negotiated the fee amount in arm's length negotiations and determined that the fee amount is fair and reasonable.

## ii. The Degree of Success Obtained Demonstrates the Reasonableness of the Requested Fees

As the Second Circuit noted in *Fisher* "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606-07 (2d Cir. 2020) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114, (1992) (*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). *See Rojas v. Pizza Pete's LLC*, 2019 WL 4447578, *5 (S.D.N.Y. Sept. 3, 2019) (***net settlement of 36%*** of total alleged damages after deducting costs and counsels' one-third contingency fee is "clearly reasonable given the uncertainties inherent in any litigation,"); *Chowdhury v. Brioni America, Inc*., 2017 WL 5953171, at *2 (S.D.N.Y. 2017) (***net settlement of 40%*** of FLSA plaintiffs' maximum recovery is reasonable); *Redwood v. Cassway*

November 12, 2021
Page 9

*Contracting Corp.,* 2017 WL 4764486, at \*2 (S.D.N.Y. 2017) (***net settlement of 29.1%*** of FLSA plaintiffs' maximum recovery is reasonable); *Ceesae v. TT's Car Wash Corp.*, 2018 WL 1767866, at \*6-7 (E.D.N.Y. Jan. 3, 2018), adopted by, 2018 WL 741396 (***net settlement of 50%*** of FLSA/NYLL plaintiff's maximum recovery is reasonable); *Garcia v. Cloister Apt Corp.,* 2019 U.S. Dist. LEXIS 51887, at \*5 (S.D.N.Y. Mar. 27, 2019) (plaintiffs' net settlement of $33,333.34 after the deduction of attorneys' fees and costs ***representing more than 28% of their total alleged damages*** is reasonable).

As noted above, per Plaintiffs' independent calculations based on an expanded, three-year statute of limitations, this sum represents 88% of the recoverable back pay and liquidated damages, plus attorneys' fees and costs. GKM Decl., ¶ 8. Looked at another way, this sum represents a recovery of 100% of the recoverable back pay and 76% of liquidated damages, plus attorneys' fees and costs. GKM Decl., ¶ 8.

### iii. The Requested Fees are Reasonable in Light of Traditional Criteria

Additionally, in determining a reasonable award of attorneys' fees, the Court will consider the "traditional criteria" such as "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement and (6) public policy considerations. *Goldberger,* 208 F. 3d 43, 50 (2d Cir. 2000) (internal quotations omitted). An analysis of these criteria further supports the fee requested.

### 1. The Litigation Was Complex

"The size and difficulty of the issues in a case are significant factors to be considered in making a fee award." *Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 U.S. Dist. LEXIS 105596, 2014 WL 3778173 at \*10 (S.D.N.Y. 2014). Here, given the presence of multiple claims, and the sophistication of the employer and its policies, this case did not represent a straightforward FLSA claim where a single employee seeks compensation for an easily defined amount of unpaid work. As a result, this litigation was somewhat complex, and Plaintiffs' Counsel's expertise greatly benefitted the Plaintiffs.

To start, the case involved a thorough investigation by Plaintiffs' Counsel to determine the extent of the violations. GKM Decl., ¶ 11; Pordy Decl. ¶ 11. Following Defendant's Answer, formal discovery began, and the process was time consuming and multi-faceted. *Id.* Defendant took written discovery from the individual Plaintiffs, seeking numerous documents and propounding extensive interrogatories. Additionally, Defendant moved to compel depositions of and ultimately deposed 18 Plaintiffs in this matter. *Id.* Plaintiffs' counsel met with each of these Plaintiffs to explain the deposition process and defend their depositions. *Id.* Plaintiffs' Counsel also deposed the Defendant's FRCP 30(b)(6) witnesses on numerous topics related to the Plaintiffs' job duties, Defendant's policies regarding unpaid meal periods, Defendant's policies on timekeeping and payroll, Defendant's alleged efforts towards FLSA compliance, and Defendant's alleged efforts to train the Plaintiffs on the FLSA and overtime. *Id.*

Additionally, the parties engaged expert witnesses to compile and analyze hundreds of thousands of lines of pay and hours work data, with the Plaintiffs' expert witness applying mathematical formulas to determine the damages owed in this case. GKM Decl., ¶ 10. The

November 12, 2021
Page 10

Plaintiffs' damages expert witness prepared two reports, backed up by computer data and programming, which was reviewed and critiqued by Defendant's expert witness, and both expert witnesses were deposed. *Id.*

Following discovery, Plaintiffs' Counsel combed through the records produced during discovery, along with the deposition testimony, to prepare and present cross-briefing on summary judgment, resulting in the denial of summary judgment in all respects except the Unpaid Minutes, Unpaid Meal Period, and Delayed Payment Claims for those Plaintiffs who did not submit deposition testimony. GKM Decl., ¶ 11.; Dkt. 108.

Taken together, this litigation required significant effort and expertise by Plaintiffs' Counsel to advance Plaintiffs' claims and reach a favorable outcome.

## 2.   The Time and Labor Required Was Extensive

Significant time and labor were spent by Plaintiffs' Counsel in reaching the settlement. GKM Decl., ¶ 11; Pordy Decl., ¶ 14.  During the 25 months spent litigating this lawsuit, Plaintiffs' Counsel have not been paid for any of the work that they have performed. This uncompensated work has been substantial and includes: 1) interviewing Plaintiffs and investigating claims; 2) preparing and filing the Complaint; 3) attending court conferences; 4) preparing the First Amended Complaint; 5) negotiating a discovery plan with Defendant; 6) preparing written discovery to Defendant; 7) analyzing written discovery requests and conferring with Plaintiffs to respond to same; 8) working with Plaintiffs to compile documents in response to Defendant's requests; 9) meeting and conferring with Defendant's Counsel concerning discovery disputes; 10) meeting with Plaintiffs to prepare for depositions; 11) defending Plaintiff depositions; 12) noticing Rule 30(b)(6) depositions on numerous topics; 13) preparing for Rule 30(b)(6) depositions; 14) taking Rule 30(b)(6) depositions; 15) engaging an expert damages witness to prepare damages calculations by analyzing hundreds of thousands of lines of data; 16) analyzing the report of Defendant's expert witness; 17) taking and defending expert damages' witnesses Depositions; 18) preparing for and drafting summary judgment briefing; 19) preparing a statement of facts in support of the same; 20) preparing a settlement demand; 21) conferences with the Plaintiffs regarding settlement; 22) engaging in extensive settlement discussions; 23) negotiating over the written terms of the settlement agreement; 24) notifying Plaintiffs of the terms of the settlement agreement and obtaining their approval; 25) preparing the settlement approval papers; and 26) preparing for administration of the Settlement. GKM Decl., ¶ 11; Pordy Decl., ¶ 14.

## 3.   The Fee in Relation to the Settlement Fund is Reasonable

The Plaintiffs have negotiated an overall settlement of $673,313.54, with $391,290 of that amount allocated for attorneys' fees. As the Second Circuit explained:

Neither the text nor the purpose of the FLSA, however, supports imposing a proportionality limit on recoverable attorneys' fees. With respect to the statutory text, FLSA simply provides for a reasonable attorney's fee to be paid by the defendant. 29 U.S.C. § 216(b). Nothing in this clause or the surrounding text supports the conclusion that a reasonable attorney's fee must be a proportional fee.

November 12, 2021
Page 11

*Fisher*, 948 F.3d at 603 (internal citations omitted). This is because a "proportionality rule would also be inconsistent with the remedial goals of the FLSA, which we have deemed a 'uniquely protective statute.'" *Fisher*, 948 F.3d at 603 (citing *Cheeks*, 796 F.3d at 207).

Refusing to impose a proportionality requirement is consistent with the broad, remedial purposes of the FLSA:

> In 1938, Congress enacted the FLSA to guarantee workers a fair day's pay for a fair day's work and to guard against the evil of overwork as well as 'underpay.' By implementing a percentage cap on attorneys' fees in FLSA actions, district courts impede Congress's goals by discouraging plaintiffs' attorneys from taking on "run of the mill" FLSA cases where the potential damages are low and the risk of protracted litigation high. Fee awards in wage and hour cases should encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.

*Fisher*, 948 F.3d at 603 (internal quotations omitted).

Thus, "[i]n advancing Congress's goals under the FLSA to ensure a 'fair day's pay for a fair day's work,' the law cannot be read to impose a proportional limitation based on the perceived complexities of the litigation." *Id.* As the Second Circuit explained, "if plaintiffs' attorneys in these so-called "run of the mill" FLSA actions are limited to a proportional fee of their client's recovery. . . no rational attorney would take on these cases unless she were doing so essentially pro bono. Without fee-shifting provisions providing compensation for counsel, employees like Fisher would be left with little legal recourse." *Id.*

Given this, the Second Circuit noted that:

> [W]e have long held -- and we reiterate today -- that a fee may not be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation. The Supreme Court, this Court, and district courts in this Circuit have long recognized the significance of attorneys' fees in civil rights cases and have not hesitated to award or approve disproportionate fees to counsel.

*Fisher*, 948 F.3d at 604-05.

In light of this, the requested fee — which, as explained below, represents less than Plaintiffs' Counsel's lodestar in this case — is reasonable because Plaintiffs' Counsel worked diligently to ensure recovery in this matter, which was far more complex than the "run of the mill" FLSA action described in *Fisher* given that it involved the multiple claims including recorded and unrecorded unpaid overtime work and miscalculation of the regular rate. Plaintiffs' Counsel relied on their expertise to achieve results for the Plaintiffs. Counsel's work achieved the FLSA's purpose of guaranteeing these essential workers receive a fair day's pay for a fair day's work while guarding against the evils of overwork and underpayment. Finally, all Plaintiffs were informed of the attorneys' fees and expenses being sought by Plaintiffs' Counsel under the Settlement Agreement, and the Plaintiffs approved this amount. GKM Decl., ¶¶ 5-7.

Additionally, the Plaintiffs entered into retainer agreements with Counsel providing:

November 12, 2021
Page 12

> In consideration of the services of [McGillivary Steele Elkin LLP], and other such law firms with whom they deem necessary to work on my case such as Spivak Lipton, LLP of New York City, I agree to pay such attorneys 33 ⅓% (thirty-three and ⅓ percent) of my total gross recovery (inclusive of attorneys' fees recovered from defendants) as attorneys' fees. In the event that [McGillivary Steele Elkin LLP] recovers attorneys' fees from the defendants in this action, and such fees equal or exceed the contingent fee, I will not be assessed any attorneys' fees.

*See*, Exhibit 5. Thus, because Defendant has agreed to pay $391,289.59 in attorneys' fees, the Plaintiffs will not have a contingency fee deducted from their backpay and liquidated damages recovery in order to cover attorney fees.

### 4.   The Risk of Litigation

Plaintiffs' Counsel undertook to prosecute this action without any guarantee of payment. GKM Decl., ¶ 12; Pordy Decl. ¶ 15. Plaintiffs' Counsel was required to make a significant investment of time and resources without a guarantee of any kind. Plaintiffs' claims would have been hard fought at trial by Defendant, and Defendant would have attempted to move for judgment as a matter of law and reduce or eliminate the damages owed to the Plaintiffs. Accordingly, Plaintiffs' Counsel faced significant obstacles of recovery for all Plaintiffs absent settlement.

### 5.   The Quality of Representation

As described fully in the Declarations of Gregory K. McGillivary and Hope Pordy, Plaintiffs' counsel are nationally-recognized experts in the FLSA and wage and hour law, and their expertise benefited the Plaintiffs greatly. For example, Plaintiffs' Counsel Gregory K. McGillivary has litigated hundreds of FLSA cases and is the author of the government chapter in the treatise "The Fair Labor Standards Act," E. Kearns, and Plaintiffs benefited from this level of expertise. GKM Decl., ¶ 16-21; *See also* Pordy Decl., ¶¶ 3-12.

### 6.   Public Policy Weighs in Favor of Approving the Fee

As described above, the risk in this case was high and the work performed by Plaintiffs' Counsel significant. Plaintiffs' case was not quite "run of the mill," in that Plaintiffs presented claims based on multiple theories of liability, which involved extensive work to date and would involve additional extensive work to present at trial. As such, Plaintiffs' Counsel vindicated the rights of those whose wage claims might otherwise be too small to justify the retention of able, legal counsel through the use of a collective proceeding. This advances the broad remedial public policy purposes of the FLSA.

### 7.   A Lodestar Cross-Check Support the Fees Requested

A lodestar cross-check will further demonstrate that the Settlement is fair and reasonable based on approved fee awards within the Second Circuit. The lodestar multiplier is calculated by dividing the fee award by the lodestar (the reasonable hours billed multiplied by a reasonable hourly rate). *James v. China Grill Mgmt.*, 2019 U.S. Dist. LEXIS 72759, 2019 WL 1915298 at *8 (S.D.N.Y. 2019). "Where the lodestar method is used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness

November 12, 2021
Page 13

of the claimed lodestar can be tested by the court's familiarity with the case." *Bryant v. Potbelly Sandwich Works, LLC*, 2019 WL 1915298, at *19 (S.D.N.Y. 2020).

"Courts in this Circuit regularly award lodestar multipliers from two to six times lodestar with some courts approving fee requests that are up to eight times the lodestar, and in some cases, even higher . . . ." *Bryant*, 2020 U.S. Dist. LEXIS 21900, at *19-20.

Multiplying the hourly rates here by the hours of work performed through November 10, 2021, results in a lodestar of $637,628.50.[6] Here, the Settlement provides for $391,289.59 in attorneys' fees. Thus, Plaintiffs' Counsel's lodestar is a ***negative 1.63X multiplier***. "Where a percentage fee is on the higher end of the range of reasonable fees but still represents a negative multiplier to the total lodestar, there is 'no real danger of overcompensation.'" *Id.* Moreover, the amount and reduction were negotiated with Defendant's counsel to reach an amount that was fair and reasonable.

Notably, Plaintiffs' Counsel negotiated a significant reduction in fees when Defendant argued for the reduction of their lodestar in connection with work performed on behalf of individuals who were voluntarily dismissed due to their inability to participate in discovery and other difficulties of litigation during the height of the COVID-19 pandemic and as a result of the summary judgment decision. GKM Decl. ¶ 14. Additionally, although fees continued to accrue after Plaintiffs' opening demand, through settlement negotiations, and through settlement administration, the amount of agreed fees under the Settlement has remained the same. *Id.*

As set forth in Sections III(A) and (B), Plaintiffs' counsel zealously and skillfully litigated this collective action with no guarantee of success and in response to the Defendant's vigorous defense. Moreover, the Plaintiffs achieved an outstanding degree of success in recouping unpaid overtime wages. Under these circumstances, a lodestar cross check supports the attorneys' fees requested.

### D. Approval of Plaintiffs' Counsel's Expenses is Warranted

In this litigation, Plaintiffs' Counsel has incurred $43,710.41, in out-of-pocket expenses. GKM Decl. ¶ 33; Pordy Decl. ¶ 13. Counsel are entitled to reimbursement of litigation expenses from the settlement fund. 29 U.S.C § 216(b). Plaintiffs' Counsel's expenses, including experts, copying, electronic research, travel and printing, were reasonable and necessary to counsel's representation of Plaintiffs. *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 390 (S.D.N.Y. 2017) (awarding expenses for experts, copying, electronic research, travel and printing, and other out-of-pocket expenses).

### IV.   Conclusion

For all of the above reasons, the parties believe that this Settlement is a favorable outcome and will appropriately compensate Plaintiffs for the overtime pay issues that are the subject matter

---

[6] Attached to the Declaration of Gregory K. McGillivary (Exhibit 3) are the fee and expense listings for services performed by McGillivary Steele Elkin LLP as Attachment A.  Attached to the Declaration of Hope A. Pordy (Exhibit 4) are the fee and expense listing for services performed by Spivak Lipton LLP as Attachment A.

November 12, 2021
Page 14

of this litigation. Accordingly, the parties respectfully submit that the Settlement, in its entirety, is fair and reasonable and should be approved by the Court.

Sincerely,

McGILLIVARY STEELE ELKIN LLP

Gregory K. McGillivary

cc: All Counsel of Record (via ECF)